**Linda FROMM–VANE, Plaintiff,**

v.

**LAWNWOOD MEDICAL CENTER, INC. d/b/a HCA Lawnwood Regional Medical Center, Defendant.**

**No. 96–14244–CIV.**

United States District Court, S.D. Florida, Fort Pierce Division.

Dec. 12, 1997.

---

Lance M. McKinney, Pavese, Garner, Haverfield, Dalton, Harrison & Jensen, Cape Coral, FL, Scott R. Schomber, Strauss, Schomber & Williams, Coconut Grove, FL, for Plaintiff.

Mark E. Edwards, Jeanne Casstevens Thomas, Nashville, TN, Alexander D. Del Russo, Levy, Kneen, Wiener, Kornfeld & del Russo, PA, West Palm Beach, FL, for Defendant.

### ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Defendant Lawnwood Medical Center, Inc.'s ("Lawnwood") Motion for Summary Judgment ("Motion") (DE # 31).

UPON CONSIDERATION of the Motion, response, reply, materials submitted, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

### STATEMENT OF FACTS [1]

Plaintiff, Linda Fromm–Vane ("Fromm") was employed as the Chief Nursing Officer at Lawnwood on or about October 1, 1992.[2] As Chief Nursing Officer, Fromm was responsible for the Department of Nursing. Fromm reported directly to Lawnwood's Chief Executive Officer, Jon C. Trezona ("Trezona"). During Fromm's employment at Lawnwood, William Vaschon ("Vaschon") served as Lawnwood's Chief Financial Officer ("CFO"). Vaschon, like Fromm, was one of four senior managers who reported directly to the CEO.

On or about July 27, 1993, Fromm began to see a psychologist, C. Jonathan Ahr, Ph.D. At some point between Fromm's first visit and August 17, 1993, Ahr diagnosed Fromm as suffering from a depressive disorder. Dr. Ahr described Fromm as overloaded, hyper vigilant and suffering from disturbed thinking. Dr. Ahr opined that Fromm was undergoing severe marital dysfunction and that her job was an additional stressor. According to Dr. Ahr, Fromm's depression was of such a nature that she could not carry on her daily routine.

During the summer of 1993, concerns arose over Fromm's job performance at Lawnwood. In August of 1993, a group of nurse managers met with David Riley ("Riley"), Lawnwood's Director of Human Resources, to complain about Fromm's abilities and inabilities as a manager and director. The nurse managers told Riley that they were prepared to resign because of Fromm. In addition, the nurse managers prepared a statement setting forth approximately twenty-two expectations the nurse managers had of Fromm. Several assistant directors of nursing also went to Riley with concerns about Fromm. Riley met with Trezona, Lawnwood's CEO, and informed him about

---

1. Unless otherwise noted, the following facts are undisputed.

2. Fromm was also referred to as the Assistant Administrator for Nursing.

the nurse managers and assistant directors' complaints. At the meeting, Trezona decided to terminate Fromm. On September 10, 1993, Trezona met with Fromm and encouraged her to resign from her position at Lawnwood.[3] Fromm did not report to work after the September 10, 1993 meeting with Trezona. Not having heard from Fromm on the issue of her resignation, Trezona officially terminated Fromm's employment by letter dated September 20, 1993.

Dr. Ahr's notes on Fromm from September 10, 1993 state, "Going to be fired at work. Great!" On September 13, 1993, Dr. Ahr prepared a letter to Lawnwood asking that Fromm be granted a leave of absence for at least four weeks. In the letter, Dr. Ahr described Fromm as "under so much pressure now due to environmental stressors that she is unable to function in the work setting." In Dr. Ahr's opinion, Fromm would benefit from intense outpatient psychotherapy and would be able to return to work within four to six weeks. The letter from Dr. Ahr was Fromm's first request for a leave of absence or for any type of accommodation relating to her mental state. According to Dr. Ahr, Fromm's depression abated by April 15, 1994 and no longer affected Fromm's ability to carry on her daily routine. Dr. Ahr reached this conclusion sometime during the first three months of 1994.

In support of her sexual harassment hostile work environment claim, Fromm offers the following undisputed facts. Vaschon, Lawnwood's CFO, frequently talked dirty, made sexual jokes and used offensive language in Fromm's presence. On one occasion, Vaschon made a reference to the size of Fromm's husband's penis. Vaschon spoke about his visits to whorehouses and about women's breasts. He invited Fromm to lunch a number of times in order to talk about his sexual exploits with his girlfriend. Fromm could not recall if any of Vaschon's comments were directed at her or her physical appearance. It is undisputed, however, that Vaschon never touched Fromm.

People at the hospital were generally aware of Vaschon's "dirty talk"—it was part of his personality. Vaschon spoke this way in front of other people besides Fromm. When Fromm approached other people about Vaschon's comments, people would say, "that's just Bill." In response to Vaschon's comments, Fromm would say, "Oh, Bill," or "Please," "Please, Bill, don't," or that she did not want to hear it. Fromm may have told Vaschon that she did not like his talk. Fromm thought Vaschon's behavior was inappropriate in a business setting. She was shocked by Vaschon's statements and felt uncomfortable. On one occasion, she may have laughed nervously at one of his comments. When asked how Vaschon's statements affected her job, Fromm testified that she knew she had to humor him because Vaschon was unofficially in charge of her budget and any financial resources she needed. Fromm never filled out a written complaint about Vaschon's behavior.

## DISCUSSION

### I. Summary Judgment Standard

The standard to be applied in reviewing a summary judgment motion is stated unambiguously in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. *See Twiss v. Kury,* 25 F.3d 1551, 1554 (11th Cir.1994). The moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). An issue of fact is "material" if it is a

---

**3.** A genuine issue of material fact remains as to whether Trezona told Fromm during the September 10, 1993 meeting that she would be terminated if she did not resign.

legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.*

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Id.* However, the non-moving party:

> may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Rule 56(e), Fed.R.Civ.P. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden" applicable to the particular cause of action before it. *Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513. If the non-movant fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the

non-movant, summary judgment may be granted. *Id.* at 254–55, 106 S.Ct. at 2513–14.

Additionally, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *Id.*

## II. Americans with Disabilities Act Claim

Fromm has filed suit under the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA").[4] To establish a prima facie case under the ADA, Fromm must show the following: 1) she has a disability, 2) she is a qualified individual and 3) she was discriminated against because of the disability. 42 U.S.C. § 12132; *Pritchard v. Southern Company Services,* 92 F.3d 1130, 1132 (11th Cir.), *amended on reh'g in part,* 102 F.3d 1118 (11th Cir.1996) (modifying last paragraph of opinion with no substantive changes), *cert. denied,* —— U.S. ——, 117 S.Ct. 2453, 138 L.Ed.2d 211 (1997). In moving for summary judgment, Lawnwood presents the following arguments: 1) Fromm is not disabled within the meaning of the ADA and 2) Lawnwood had no duty to accommodate Fromm because she failed to advise the hospital of her disability.[5]

■ Lawnwood initially argues that Fromm did not suffer from a disability within the meaning of the ADA. A disability under the ADA is defined as: A) a physical or

---

**4.** Fromm also seeks relief under the Florida Civil Rights Act, Fla. Stat. § 760.01 *et seq.* Federal law is applicable to claims arising under the Florida Civil Rights Act. Accordingly, the Court's discussion of the ADA claim will also apply to the Florida Civil Rights Act disability discrimination claim.

**5.** In its reply, Lawnwood first raises the issue of Fromm's status as a "qualified individual" under the ADA. Local Rule 7.1.C., S.D. Fla. L.R., limits

reply memoranda to rebuttal of matters raised in memoranda in opposition to a motion. The Court finds that Lawnwood's discussion of Fromm as a "qualified individual" under the ADA is improperly raised for the first time in its reply. Accordingly, the Court will not consider the "qualified individual" argument in ruling on the instant Motion.

mental impairment that substantially limits one or more of the major life activities of such individual; B) a record of such impairment; or C) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Lawnwood characterizes Fromm as suffering from extreme stress due to her divorce and professional responsibilities. Lawnwood posits that neither job-related stress nor stress arising out of an impending divorce rise to the level of a disability for purposes of the ADA. Fromm, on the other hand, claims she suffered from a mental and emotional impairment. Affidavit of Linda Fromm–Vane at ¶ 6.[6] Fromm's position is supported by the deposition testimony of her psychologist, Dr. Ahr, who sometime between July 30, 1993 and August 17, 1993 diagnosed Fromm as suffering from depressive disorder. Deposition of Jonathan C. Ahr, Ph.D. at pp. 8, 10–11.[7] Based on the foregoing, the Court finds a genuine issue of material fact as to whether or not Fromm suffered from a mental impairment.

■ A mental or physical impairment without more does not translate into a disability under the ADA. *Pritchard,* 92 F.3d at 1133. To constitute a disability under the ADA the impairment must substantially limit a major life activity. *Id.* at 1132. In determining whether an individual is substantially limited in a major life activity, the following factors should be considered: 1) the nature and severity of the impairment, 2) the duration or expected duration of the impairment, and 3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2).

Although Fromm has not been as clear as the Court would have liked in expressing which major life activities were substantially affected by her alleged impairment, the Court extracts from Fromm's response and deposition testimony the allegation that Fromm's ability to work was substantially limited.[8] Drawing all inferences in the light most favorable to Fromm, as the Court must for purposes of the instant Motion, the Court finds that a genuine issue of material facts exists as to whether an impairment substantially limited one or more of Fromm's major life activities. The Court reaches its conclusion by considering Fromm's deposition testimony as well as the deposition testimony of her treating psychologist. *See* Deposition of Linda Fromm–Vane at pp. 185–86; Deposition of C. Jonathan Ahr, Ph.D. at pp. 8, 28. The Court also finds that genuine issues of material fact remain as to the nature, severity and duration of Fromm's alleged impairment—all three of which are to be considered in determining whether an individual is substantially limited in a major life activity. *See* 29 C.F.R. § 1630.2(j)(2).

■ In a second attempt to defeat Fromm's ADA claim, Lawnwood posits that it had no duty to make a reasonable accommodation for Fromm because it was not informed of her disability and need for reasonable accommodation until after the decision was made to terminate her employment. In order for ADA liability to attach, an employer must have actual or constructive knowledge of the employee's disability. *Gordon v. E.L. Hamm & Associates, Inc.,* 100 F.3d 907, 910 (11th Cir.1996), *petition for cert. filed,* (Aug. 25, 1997). While the Court agrees that it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed,[9] the Court cannot determine as a matter of law that Lawnwood

---

**6.** A mental impairment includes, "any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2).

**7.** The Eleventh Circuit has noted that depression may constitute a mental impairment for purposes of the ADA. *See Pritchard,* 92 F.3d at 1132.

**8.** In order for a condition to substantially limit the ability to work, it must significantly restrict the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. 29 C.F.R. § 1630.2(j)(3)(I); *Pritchard,* 92 F.3d at 1133.

**9.** *See* Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. § 1630, Appendix at 407.

owed no duty to Fromm when it received the September 13, 1993 letter from Fromm's psychologist. First, there is an outstanding issue of fact as to what occurred at the September 10, 1993 meeting between Fromm and Lawnwood's CEO. It is not clear whether Fromm was asked to resign, advised of her impending termination or terminated during the September 10, 1993 meeting with Trezona.[10] Second, Lawnwood has not supplied the Court with any authority supporting the proposition that notice of disability and a request for reasonable accommodation made after the decision to terminate the disabled employee, but prior to the actual termination, relieves an employer of its duties under the ADA.[11] Third, Lawnwood has not provided the Court with authority to indicate that an employee who is asked to resign, but has not yet done so, is no longer an employee for purposes of the ADA. While a decision to terminate prior to knowledge of the disability supports the argument that the adverse employment action could not have been based on the yet unknown disability,[12] it cannot be used as a basis for avoiding the employer's duties under the ADA.

For the foregoing reasons, the Court finds that Lawnwood's Motion for Summary Judgment should be denied as to the ADA and related state law counts.

### III. Title VII Claim

Fromm alleges that she was subjected to hostile work environment sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq.[13]

Fromm's sexual harassment claim is based on comments of a sexual nature made by Vaschon, Lawnwood's CFO. It is undisputed that Vaschon made the remarks in question. Fromm's reaction to the comments is also undisputed.

■ To prove a Title VII claim against Lawnwood for hostile work environment sexual harassment, Fromm must prove the following: 1) Fromm belonged to a protected group, 2) Fromm was subjected to unwelcome sexual harassment, 3) the harassment complained of was based upon sex, 4) the harassment complained of affected a term, condition or privilege of employment and 5) Lawnwood knew or should have known of the harassment and failed to take prompt remedial action. *Henson v. City of Dundee*, 682 F.2d 897, 903–05 (11th Cir.1982).

■ Lawnwood asks the Court to enter summary judgment in its favor on the Title VII count and related Florida Civil Rights Act count. In support of its position, Lawnwood argues that Fromm cannot meet the fourth element of the prima facie case for hostile work environment sexual harassment—that the harassment complained of affected a term, condition or privilege of employment. To meet the fourth element of the prima facie case, sexual harassment must be sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (citations omitted); *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir.1982). A determination as

10. In noting the existence of a genuine issue of material fact as to termination, the Court in no way intends to decide whether notice of an impending termination suffices to relieve an employer of its duties under the ADA.

11. Lawnwood cites the Eighth Circuit case of *Miller v. National Casualty Company*, 61 F.3d 627 (8th Cir.1995), for the proposition that an ADA violation cannot exist when the employee has failed to apprise the employer of the disability. *Miller* can easily be distinguished from the present facts. In *Miller,* the employee first provided notice of a disability one week after the company terminated her employment. In the present case, a genuine issue of material fact remains as to the actual date of Fromm's termination.

12. *See Mears v. Gulfstream Aerospace Corp.*, 905 F.Supp. 1075, 1081 (S.D.Ga.1995), *aff'd*, 87 F.3d 1331 (11th Cir.1996).

13. Fromm also pleads sexual discrimination under the Florida Civil Rights Act, Fla. Stat. § 760.01 *et seq.* The Court addresses the Florida Civil Rights Act count simultaneously with the Title VII count.

to whether sexual harassment is sufficiently severe and persistent should be made with regard to the totality of the circumstances. *Harris,* 510 U.S. at 23, 114 S.Ct. at 371.[14] In addition, the evidence supporting the fourth element of the prima facie case must be viewed objectively and subjectively. The Supreme Court has stated that "[c]onduct that is not severe or pervasive enough to create an objectively hostile work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Id.* at 370. The Supreme Court went on to note that if the victim does not subjectively perceive the environment to be abusive, the conduct has not violated Title VII. *Id.*

■ Viewing the totality of the circumstances in the light most favorable to Fromm, the Court is led to the inescapable conclusion that Vaschon's comments, however distasteful and unprofessional they may have been, were not sufficiently pervasive so as to alter the conditions of Fromm's employment and create an abusive working environment. The Court so finds for two reasons. First, the Court determines that Vaschon's remarks were not severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, although a reasonable person may have found the remarks to be in poor taste and unprofessional.[15]

Second, after carefully reviewing Fromm's deposition testimony and drawing all reasonable inferences in favor of Fromm, the Court concludes that Vaschon's conduct did not affect Fromm's employment. The following excerpts from Fromm's deposition are the only evidence regarding the effect Vaschon's comments had on Fromm's employment:

Q. How did [Vaschon's comments] affect your job?

A. I knew I had to humor him. I knew unofficially he was in charge of my budget, any financial resources I want to get and any equipment I wanted.

Q. Do you feel that his remarks were—other than the fact that they made you uncomfortable, how did that affect the job that you did at Lawnwood?

A. I realized I had to accept those, whatever he had to dish out because of the fact that I was pretty much in a position where he controlled my finances.

As the Supreme Court noted in *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), and confirmed in *Harris,* mere utterance of an epithet which engenders offensive feelings does not sufficiently affect the conditions of employment so as to implicate Title VII. *Harris,* 510 U.S. at 21, 114 S.Ct. at 370. Such is the case here. Viewing all inferences in the light most favorable to Fromm, the Court concludes that, while offensive and objectionable in Fromm's eyes, Vaschon's comments did not affect a term, condition of privilege of Fromm's employment. Fromm theorizes about Vaschon's role as CFO in attempting to provide evidence that his behavior affected her employment at Lawnwood. Fromm, however, does not claim that indulging Vaschon was a prerequisite for approval of requests for resources or equipment nor does she allege that requests were denied because of her disapproval of Vas-

14. The totality of the circumstances may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id.*

15. The Court finds guidance in Judge Posner's comments in *Baskerville v. Culligan International Company,* 50 F.3d 428 (7th Cir.1995), a case similar to the instant case in that the alleged harasser, although guilty of making vulgar re-

marks of a sexual nature, never touched the plaintiff, never invited her either explicitly or by implication to engage in any sexual activity, never threatened the plaintiff and never exposed himself to the plaintiff. Judge Posner, in reversing a Title VII jury verdict in favor of a female employee, noted that "only a woman of Victorian delicacy—a woman mysteriously aloof from contemporary American culture in all its sex-saturated vulgarity" would find the conduct in question as distressing as the plaintiff therein. *Id.* at 431.

chon's tales. In fact, Fromm does not provide any evidence from which the Court could even infer a relation between Vaschon's vulgarities and his control over Fromm's budget.

The Court's decision to grant summary judgment in favor of Lawnwood on the Title VII and accompanying state law claims is consistent with the purpose of Title VII. Title VII was designed to protect women from the kind of male attentions that can make the workplace hell for women. *Baskerville*, 50 F.3d at 430. Title VII, however, was not designed to purge the workplace of vulgarity. *Id.*

### IV. Florida Whistle Blower's Claim

■ Upon review of Fromm's claim under the Florida Whistle–Blower's Act, Fla. Stat. § 448.101 *et seq.*, the Court determines that the whistle-blower's claim is not so related to the ADA and Florida Civil Rights Act claims so as to form part of the same case or controversy. 28 U.S.C. § 1367(a). Accordingly, the Court declines to exercise supple-mental jurisdiction over Count VI of Fromm's Complaint.

### CONCLUSION

Based on the foregoing, it is ORDERED AND ADJUDGED that the Lawnwood's Motion for Summary Judgment be, and the same is hereby, GRANTED in part and DENIED in part. Lawnwood's Motion is DENIED as to Fromm's ADA and related state law counts. Lawnwood's Motion is GRANTED as to the Title VII and accompanying state law counts. Finally, Fromm's claim under the Florida Whistle–Blower's Act is dismissed with leave to refile in the appropriate state court.