Ishaq I. CHANDA, Plaintiff-Appellant,

v.

ENGELHARD/ICC, f.k.a. Ciba-Geigy Corp., Defendant-Appellee.

No. 99-13917.

United States Court of Appeals,

Eleventh Circuit.

Dec. 4, 2000.

Appeal from the United States District Court for the Southern District of Florida. (No. 97-00892-CV-KMM). K. Michael Moore, Judge.

Before TJOFLAT, HILL and POLITZ[*], Circuit Judges.

POLITZ, Circuit Judge:

Ishaq I. Chanda appeals an adverse grant of summary judgment. The trial court found that he failed to establish that he was "disabled" under the ADA, failed to pursue any retaliation claim, and failed to rebut defendant's non-discriminatory reasons for his termination. Concluding that summary judgment was appropriate, we affirm.

BACKGROUND

Chanda, a 44-year-old Pakistani male, is licensed in Florida as a professional engineer. He began working as an engineer technician at Ceiba-Geigy Corp in 1990, and in February 1993 became a shift supervisor in the production department. His duties included research and development on different materials used by the corporation, drafting facility lay-outs, and building tool prototypes. The corporation merged in 1993, becoming Engelhard/ICC. In December of that year, Englehard laid off Chanda but rehired him the same day for a position in its Quality Control Department.

In March of 1994 he was reassigned as a quality control technician. This position required Chanda to cut various widths of honeycomb foam-board with a retractable utility knife and metal scraper to obtain test samples. While previously this cutting job rotated between four or five employees, Chanda alone performed it. Deposition testimony indicates that Engelhard assigned Chanda the cutting job as part of "the Drill," an operation in which an employee received many nearly impossible tasks, ultimately leading to resignation or dismissal for poor performance.

---

[*]Honorable Henry A. Politz, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

In July of 1994, Chanda's supervisor and another superior met with Chanda to discuss his work mistakes. Chanda was persuaded that the supervisor was prejudiced against him in that he "favored the others." Engelhard documented the meeting and complaint in a memorandum dated July 1, 1994. In August, Chanda began complaining to co-workers and the company's Environmental Health and Safety Coordinator about pain in his wrist. The Coordinator told Chanda to use a wristband and Myoflex cream, and also suggested exercise. Chanda did as he was told but the pain continued and increased in frequency. In October, Chanda again complained to his superiors and was told to see his family physician. On November 12, the family physician diagnosed Chanda with mysositis, an inflamation of the wrist and forearm.

In December of 1994, Chanda asked his supervisor to reassign him to engineering duties. The request was denied. At least two other positions came available at Engelhard during the time Chanda was cutting. Despite his qualifications, he was not considered for either position.

On July 13, 1995, Chanda submitted a memorandum to the company complaining of pain in his right forearm and asserting it's relation to his cutting job. Upon receiving the written complaint, Engelhard sent Chanda to his personal physician who restricted Chanda from repetitive motions and lifting over 20 pounds.

Engelhard placed Chanda on medical leave on July 18, 1995. On July 26, Engelhard sent Chanda to its own physician who warned Chanda that his personal physician's diagnosis threatened his job. The company physician diagnosed Chanda with tendinitis, but cleared him to work with similar restrictions, instructing him to wear a brace. Despite this recommendation, Engelhard refused to take Chanda off medical leave. In August or September of 1995, Enhelhard advertised for a position in the wheel manufacturing department, but failed to post the position internally.

Chanda's physician removed his restriction in October, and on October 30 Engelhard again assigned Chanda to the cutting job. After only five days Chanda's pain returned, rendering him unable to perform such activities as grasping, turning, lifting, typing, writing, using a computer, or other functions requiring the use of his right hand. Chanda returned to the company physician who permanently restricted him from performing the cutting function. Finding that Chanda could no longer perform the cutting duties required of his position, Engelhard terminated his employment on November 9, 1995. Chanda brought the instant action under the Americans with Disabilities Act[1] and the Florida Civil Rights Act.[2] Chanda also sued for retaliatory

---

[1]42 U.S.C. §§ 12101 *et seq.* (1997).

[2]FLA. STAT. Ch. 760.10 (1997).

discharge under Title VII.[3]

ANALYSIS

We review the district court's grant of summary judgment *de novo,*[4] resolving all factual issues with all reasonable inferences being drawn in favor of the non-movant.[5] The moving party has the burden of demonstrating that there is no genuine issue as to any material fact, and a summary judgment is to be entered if the evidence is such that a reasonable jury could find only for the moving party.[6] Once the moving party provides support for its motion, the non-moving party must come forward with extrinsic evidence "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[7] The Florida courts have recognized, and both parties agree, that actions under the Florida Civil Rights Act are analyzed under the same framework as the ADA.[8] We therefore address Chanda's disability claims using an ADA analysis.

*A.  Disability Discrimination*

The ADA mandates that employers shall not discriminate against "a qualified individual with a disability."[9] A "qualified individual with a disability" is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."[10] This appeal poses the question whether Chanda provided sufficient evidence for a reasonable jury to find him disabled under the Act.

The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or

---

[3]42 U.S.C. §§ 2000e *et seq.* (1997).

[4]*Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1326 (11th Cir.1998); *Wouters v. Martin County, Florida,* 9 F.3d 924, 928 (11th Cir.1993).

[5]*Sammons v. Taylor,* 967 F.2d 1533, 1538 (11th Cir.1992).

[6]*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

[7]*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(e).

[8]*See Fromm-Vane v. Lawnwood Med. Ctr., Inc.,* 995 F.Supp. 1471, 1475 n. 4 (S.D.Fla.1997).

[9]42 U.S.C. § 12112(a).

[10]42 U.S.C. § 12111(8).

more of the major life activities of an individual."[11]  Chanda maintains that three doctors diagnosed him with tendinitis and that such an impairment constitutes a disability under the ADA. While Engelhard appears to concede that Chanda's tendinitis is a physical impairment, in order to constitute a disability within the meaning of the statute, a physical impairment must "substantially limit[ ] one or more of the major life activities of an individual."[12]  We "look to EEOC regulations to assess the next analytical step of determining whether a physical impairment substantially limits a major life activity."[13]

The regulations define "substantially limits" as rendering an individual "[u]nable to perform a major life activity that the average person in the general population can perform" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."[14]  The regulations also discuss three factors:  (1) the nature and severity of the impairment;  (2) the duration or expected duration of the impairment;  and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.[15]

1.      *Major Life Activity*

We first must identify the major life activity involved.  The regulations define major life activities as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."[16]  On appeal Chanda focuses on his major life activity of performing manual tasks.

2.      *Substantial Limitation*

We next address the crucial issue whether Chanda's tendinitis substantially limited his major life activity of performing manual tasks.  Chanda asserts that the manual tasks he no longer can perform include

---

[11]42 U.S.C. § 12102(2).

[12]42 U.S.C. § 12102(2)(A).  *See also Hilburn v. Murata Electronics North America, Inc.,* 181 F.3d 1220, 1227 (11th Cir.1999);  *Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1132 (11th Cir.), *amended in part on reh'g by,* 102 F.3d 1118 (11th Cir.1996).

[13]*Hilburn,* 181 F.3d at 1226 (citing *Gordon v. E.L. Hamm & Assocs., Inc.,* 100 F.3d 907, 911 (11th Cir.1996)).

[14]29 C.F.R. §§ 1630.2(j)(1)(i), (ii) (1997).

[15]29 C.F.R. § 1630.2(j)(2).

[16]29 C.F.R. § 1630.2(i ) (1997).

turning handles, grasping, holding or lifting objects, using a computer or writing with a pen. While not approving the treatment accorded Chanda herein, our analysis of the regulations and controlling jurisprudence persuades that the record contains sufficient evidence to support the summary judgment.

Our reasoning in *Hilburn* is compelling. Therein we affirmed the trial court's finding of a physical impairment based on petitioner's heart disease, but held that a diminished activity tolerance for normal daily activities such as lifting, running and performing manual tasks, as well as a lifting restriction, did not constitute a disability under the ADA.[17] Similarly, while Chanda's tendinitis constitutes a physical impairment, his deposition testimony and that of his doctors fails to establish a genuine issue as to any *substantial* limitation. Chanda acknowledged an ability to assist his spouse with household activities, to dress and feed himself, and to drive an automobile.[18] He acknowledged his ability to attend school and take four classes, all of which required the taking of notes.[19] He stated that he could perform the functions of a quality control engineer, which involved writing and computer use.[20] In light of Chanda's ability to use his hand for the purposes acknowledged in his testimony, we conclude that his tendinitis was not the statutorily required substantial limitation on his ability to perform manual tasks.[21]

We note that Chanda's personal physician stated that the impairment restricted Chanda in "the major life activities which is [sic] going to require movement of [sic] right forearm and right wrist, such as tennis, typing, cutting, grasping objects, writing with a pen, and working on a computer."[22] We rejected similar statements by a doctor in *Hilburn,*[23] finding that "the absence of any specific facts which would substantiate

---

[17]*Hilburn,* 181 F.3d at 1228.

[18]Chanda Dep., pp. 188-89.

[19]*Id.*

[20]*Id.* at 227. Chanda was asked "On October 30th of 1995 when you went back to work after being out of work for several months, could you have spent four hours cutting the honeycomb and four hours doing the engineering work that you had described earlier?" to which he responded "yes, I could have done that." He also described his engineering work, including drafting the facility layout on AutoCAD and typing reports on the computer.

[21]In *Hilburn,* petitioner answered deposition questions in the affirmative when asked if she could "walk and run," "sit and stand," "sleep and eat," "bathe," "dress," "write with a pencil and pen," "work around the house," "cook," and "work." 181 F.3d at 1228.

[22]Abbasi Dep. at 29-30.

[23]181 F.3d at 1227-28.

[the doctor's] conclusion deprives this medical diagnosis of any probative value."[24]  Here also, Chanda's personal doctor fails to articulate any specific facts describing his limitation and, given Chanda's own deposition testimony contradicting his doctor's prognosis, we must conclude that the doctor's medical conclusion is insufficient to create a genuine issue of material fact.

We are persuaded that a plaintiff must demonstrate that he is substantially limited in a range of manual tasks rather than a narrow category thereof.[25]  Chanda's only restrictions that were severe, of lengthy duration, and with a long term impact were related to a narrow category of tasks, such as typing or cutting foamboard for an extensive period of time.  He acknowledged that he could perform daily activities, including dressing himself, driving, and attending classes or working in a position requiring computer usage.  We must conclude that while his tendinitis constitutes an impairment, it falls short of substantially limiting the major life activity of performing manual tasks.

We are aware of the recent Sixth Circuit decision in *Williams v. Toyota Motor Manufacturing, KY, Inc.,*[26] in which an employee working on the assembly line developed carpal tunnel syndrome and tendinitis in her hands and arms.  After being temporarily reassigned to car inspections, her new position was expanded to include gripping a block of wood with a sponge attached and wiping down cars.  Aside from wiping, the new job required her to keep her hands and arms up around shoulder height repetitively over several hours.  Her ligament and muscle problems reappeared, this time more severely, with tendinitis now spreading to her shoulder and neck as well.  Toyota refused her request to return to car inspection and Williams sued.  The district court granted the employer's motion for summary judgment, finding that Williams was not disabled under the ADA. The Sixth Circuit reversed, holding that "the plaintiff's set of impairments to her arms, shoulders and neck are sufficiently disabling to allow the fact finder to find she crosses the threshold into the

---

[24]*Id.;  see also Evers v. General Motors Corp.,* 770 F.2d 984, 986 (11th cir.1985) ("conclusory allegations without specific supporting facts have no probative value").

[25]*See Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723 (5th Cir.1995) (finding that an arm injury that restricted heavy lifting and repetitive movements was not a disability when plaintiff could perform daily activities such as feeding herself, driving, washing dishes, and vacuuming);  *Khan v. Cook County,* No. 96-C-1113 (N.D.Ill. June 27, 1997)(unpublished opinion) (holding that carpal tunnel syndrome did not substantially limit major life activity of performing manual tasks when impairment only limited a narrow range of tasks, such as writing longer than 15 to 20 minutes, tying shoes, or lifting more than 15 pounds); *Ouzts v. USAir,* Civ. A. No. 94-625 (W.D.Pa. July 26, 1996) (unpublished opinion) (rejecting plaintiff's claim that her inability to grasp or manipulate an item, or carry more than a few pounds constituted a disability, when plaintiff could make meals, put on make up, comb her hair, and drive).

[26]224 F.3d 840 (6th Cir.2000).

protected class of individuals under the ADA who must be accorded reasonable accommodation."[27]

The court noted that while Williams could perform "a range of isolated, non-repetitive manual tasks" over a short period of time, such as personal hygiene activities or household chores, such an ability did not effect a determination that her impairment substantially limited her ability to perform the range of manual tasks associated with an assembly line job.[28] The court found the duration of Williams's impairment, as well as its expected permanent impact, "inferrable from the permanent work restrictions prescribed by Williams's treating physicians."[29]

The Sixth Circuit's extension of ADA protection in *Williams* is of interest and value, but recognizing the case-by-case nature of the disability determination we must distinguish that case on its facts. The tendinitis at issue in *Williams* extended far beyond the wrist, encompassing petitioner's entire upper arm, shoulders, and neck. It rendered her unable to raise her arms above her head for extended periods, and proved severe enough for the court to state that "her ailments are analogous to having missing, damaged or deformed limbs...."[30] The impairment proved so pervasive as to preclude jobs that "require the gripping of tools and repetitive work with hands and arms extended at or above shoulder level for extended periods of time."[31]

In contrast, Chanda's tendinitis only rendered him unable to perform a narrow range of jobs causing pain in his wrist.[32] His deposition testimony reveals that he welcomed an engineering job, which involved the use of computers. We find little comparison between Chanda's impairment and "missing, damaged or deformed limbs." The record before us contains insufficient evidence to occasion the vitiation of the entering of summary judgment on his disability claims.[33]

---

[27]*Id.* at 843.

[28]*Id.*

[29]*Id.*

[30]*Id.*

[31]*Id.*

[32]*See Terrell v. USAir,* 955 F.Supp. 1448 (M.D.Fla.1996) (failing to find a triable issue whether plaintiff's carpal tunnel substantially limited her major life activity of caring for herself despite facts establishing that plaintiff could not effectively brush her teeth or hair and experienced discomfort in gripping the steering wheel while driving her car).

[33]Chanda also contends in his motion for reconsideration that he is disabled because his medical documents show a "record of discrimination" and, alternatively, that Engelhard fired him because he could no longer cut, and thus "perceived" him to be disabled. After thoroughly examining the record, we

*B.* *Retaliation Claim*

Chanda also brought a retaliation claim against Engelhard. This claim is clouded by Chanda's EEOC documents and his counsel's assertion at oral argument and in his brief. Chanda checked the "retaliation" box as well as the "disability" box on his EEOC papers and in the "particulars" section thereof wrote "I also complained about discrimination." Chanda's affidavit, however, states that he was "retaliated against because [he] complained both verbally and in writing about discrimination due to [his] disability." While his EEOC affidavit appears to allege retaliation for complaining of discrimination based on his disability, Chanda brought the claim under Title VII in his complaint, couching it as a ethnic discrimination claim. Counsel for Chanda also briefly discussed the retaliation claim at oral argument, basing it on national origin discrimination, and Chanda's brief asserts retaliation because he claimed national origin discrimination.

The filing of an administrative complaint with the EEOC is ordinarily a jurisdictional prerequisite to a Title VII action.[34] A Title VII action, however, may be based "not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination."[35] Chanda's EEOC filing reflects an intention to pursue a retaliation claim, but there is no reference to a national origin claim. In his Charge of Discrimination, Chanda checked the retaliation box and stated in paragraph one of the "particulars" section that he was a person with a disability and that he had "complained about discrimination." Chanda explains this in the third paragraph, stating that he believed he was "discriminated and retaliated against in violation of Title I of the Americans with Disabilities Act and the Florida Human Rights Act (Chapter 760)." Nothing in his EEOC filing mentions discrimination based on national origin, any complaint about such discrimination, or a claim

---

see no reference to either of these latter methods of proving a disability in Chanda's complaint or reply to defendant's motion for summary judgment. We thus decline to address those issues, noting only in passing that Chanda's problem would remain that "the impairment indicated in the record must [still] be an impairment that would substantially limit one or more of the individual's major life activities." 29 C.F.R. § 1630.2(k) (1997); *see also Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 645 (2d Cir.1998); *Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 510 n. 7 (7th Cir.1998); *Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1120-21 (5th Cir.1998).

[34]*Ray v. Freeman,* 626 F.2d 439, 442 (5th Cir.1980), *cert. denied,* 450 U.S. 997, 101 S.Ct. 1701, 68 L.Ed.2d 198 (1981).

[35]*Fine v. GAF Chemical Corp.,* 995 F.2d 576, 578 (5th Cir.1993) (quoting *Fellows v. Universal Restaurants Inc.,* 701 F.2d 447, 451 (5th Cir.), *cert. denied,* 464 U.S. 828, 104 S.Ct. 102, 78 L.Ed.2d 106 (1983)).

under Title VII.[36] We must conclude, therefore, that a reasonable investigation based on the EEOC charge did not and would not encompass retaliation based on complaints about national origin discrimination.

*C. Conclusion*

Summary judgment on Chanda's disability claim was appropriate because Chanda failed to present sufficient evidence such that a reasonable jury could find him disabled under the ADA. Chanda also failed to meet the initial jurisdictional requirement for his Title VII retaliation claim by not including it in his EEOC charge. Finally, because of the foregoing, the rejection of Chanda's claims under the Florida Civil Rights Act also is appropriate.

The judgment appealed is, in all respects, AFFIRMED.

---

[36]We note also that Chanda's "Intake Questionnaire" states: "I believe I was retaliated against because I complained both verbally and in writing about discrimination due to my disability." It does not mention complaining about national origin discrimination. Further, Chanda's affidavit references his written complaint in July, 1995, which involved his disability. Chanda does not reference the documented complaint in July, 1994, where Chanda stated that he felt Catron was prejudiced against him in that he "favored the others."