[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11277
Non-Argument Calendar
_____

D.C. Docket No. 3:11-cv-00416-MCR-CJK

CARY MOORE MENZIE,

Plaintiff - Appellant,

versus

ANN TAYLOR RETAIL INC.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(December 11, 2013)

Before CARNES, Chief Judge, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Cary Moore Menzie suffers from bipolar disorder and narcolepsy. She previously worked as a Sales Lead at a store owned by Ann Taylor Retail. After approximately one month on the job, Menzie's manager called her into her office where she proceeded to dress Menzie down for forty-five minutes in a one-on-one meeting. During that meeting, her manager allegedly made several discriminatory remarks about Menzie based on her bipolar disorder and gave her the option between accepting a demotion or continuing in her current position with a 95% chance that she would eventually be fired. Five days after this meeting, Menzie quit. She then sued Ann Taylor, asserting a claim of disability discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and a claim of handicap discrimination under the Florida Civil Rights Act of 1992 (FCRA), Fla. Stat. § 760.10(1)(a). Ann Taylor moved for summary judgment on all claims after discovery, and the district court granted that motion. Menzie now appeals that decision.

## I.

Ann Taylor hired Menzie to work as a part-time Sales Lead in one of its retail stores on March 21, 2010. Her superiors were Carolyn Lang and Eve Marcus DeMouy, the store's co-managers. When Menzie interviewed for the Sales Lead position, she neglected to inform either Lang or DeMouy about her bipolar

disorder and narcolepsy.[1]    Menzie alleges that she later told Lang about her narcolepsy on some unspecified date, but she does not allege that she ever told Lang about her bipolar condition.  She claims that she told DeMouy about her bipolar disorder at some point, although DeMouy denies that allegation.

The parties dispute how well Menzie performed her job during the time she worked as a Sales Lead.  Menzie alleges that she was frequently told she was doing a good job during her first month, but Ann Taylor claims that Lang received numerous complaints about Menzie's performance.  Lang met with Menzie on April 6, 2010, to discuss some of her struggles, and there appeared to be improvement in Menzie's performance soon after the meeting.  Lang then went on vacation on April 8th.  When she returned on April 19th, she was greeted with a new list of complaints about Menzie.  Those new complaints prompted Lang to email her district manager, Lisa Wright, that same day.  She asked Wright for advice on how to proceed with Menzie, and Wright counseled Lang to discuss her concerns with Menzie and possibly encourage her to step down to a Sales Associate position if it was better suited to her abilities.  Menzie's bipolar disorder and narcolepsy never came up in those email exchanges.

On April 21st, Lang called Menzie into her office to discuss the complaints.  Menzie alleges that she was then subjected to a forty-five minute tirade in which

---

[1] Menzie took medication and saw a therapist to treat her conditions, which she alleges kept her symptoms in check.

3

she was berated as unqualified for her job because of her bipolar disorder.[2] Menzie claims that she told Lang that the complaints about her were false, to which Lang replied that Menzie was not remembering what happened accurately because of her bipolar disorder. She allegedly proceeded to berate Menzie and told her that she was unfit for her position because bipolar people are deficient, flighty, dishonest, and untrustworthy. She said that she would have never hired Menzie if she had known about her bipolar disorder, and she then gave Menzie the choice between stepping down to a Sales Associate position or remaining as a Sales Lead with a 95% chance of eventually being fired. During that same meeting, Lang also allegedly showed Menzie that she was scheduled to work only 13.5 hours the following week. Menzie claims that Lang explained that she would be working so few hours because of her bipolar disorder.[3]

Menzie was given until April 24th to decide whether she would step down to a Sales Associate position. When the deadline arrived, she informed Lang that she

---

[2] Lang claimed that she first learned of Menzie's bipolar disorder when Menzie told her about it during this meeting.

[3] Like the weekly schedule of other part-time Sales Leads, Menzie's work hours fluctuated widely during her stint at Ann Taylor. She worked 25.5 hours her first week, 22.75 hours her second week, 17 hours her third week, 28.5 hours her fourth week, and 12 hours her fifth week. She was scheduled to work 13.5 hours the week she resigned. Lang did not learn of Menzie's bipolar disorder until the middle of that fifth week, and the number of hours Menzie was scheduled to work actually increased slightly after the April 21st meeting.

would continue working at the store.[4]  Menzie apparently had a change of heart two days later, and she handed in her resignation to Lang on April 26th along with a document titled "Report of Disability Discrimination" recounting her version of what transpired at her meeting with Lang on April 21st.  This discrimination suit followed.

## II.

We review de novo a district court's grant of summary judgment.  Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002).  Summary judgment is proper if, in light of the evidence, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The evidence and factual inferences from the evidence are construed in the light most favorable to the party opposing summary judgment.  Reynolds v. Bridgestone/Firestone, Inc., 989 F.2d 465, 469 (11th Cir. 1993).

A plaintiff asserting a disability discrimination claim[5] must establish that she (1) has a disability; (2) is qualified for the job, with or without reasonable accommodations; and (3) suffered an adverse employment action because of her

---

[4] Menzie contends that she told Lang that she would accept a demotion to a Sales Associate position, but Lang asserts to the contrary that Menzie stated that she intended to remain as a Sales Lead.

[5] Discrimination claims brought under FCRA must meet the same standard required to establish a claim under the ADA.  See Chanda v. Engelhard/ICC, 234 F.3d 1219, 1221 (11th Cir. 2000).  Accordingly, we do not analyze these two claims separately.

disability.[6]  Doe v. Dekalb Cnty. Sch. Dist., 145 F.3d 1441, 1445 (11th Cir. 1998). "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee."  Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000) (quotation marks omitted), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405 (2006).

Menzie argues that the district court erred in determining that no reasonable juror could conclude that she suffered an adverse employment action because of her disability.  She first contends that her work hours were reduced because of her disability, which qualifies as an adverse employment action.  Menzie is correct that a non-trivial reduction in work hours may qualify as an adverse employment action.  See Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1231 (11th Cir. 2006) (discussing reduction of hours as a potential adverse employment action in a sexual harassment suit under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1)); see also Baucom v. Holiday Cos., 428 F.3d 764, 767 (8th Cir. 2005) (considering claim that a reduction in work hours constituted an adverse

---

[6] Ann Taylor does not dispute that Menzie has a disability or was qualified for her position; therefore, the sole issue is whether she suffered an adverse employment action because of her disability.

6

employment action but rejecting the argument because "the slight decrease [in hours was] not materially significant"), abrogated on other grounds by White, 548 U.S. 53, 126 S.Ct. 2405.  However, the undisputed evidence shows that Menzie's hours were not reduced because of her disability.  Although Menzie alleges that Lang told her she was reducing her hours because of Menzie's disability, Lang actually assigned Menzie more work hours for the week of April 25th than she had worked the week of April 18th, when Lang first learned of Menzie's bipolar disorder.  Accordingly, Menzie's claim that her hours were reduced because of her disability is meritless.

Menzie's second argument is that she was constructively discharged from her position with Ann Taylor.  She contends that Lang gave her a choice between a demotion or being fired with near certainty, and that a reasonable person in her position would have felt compelled to quit.  She argues that it would have been futile for her to stay on as a Sales Lead, and the law does not require an aggrieved party to engage in futile behavior to prevail in a discrimination suit.  Ann Taylor responds that Menzie was not constructively discharged because Lang's alleged conduct was not severe enough to make Menzie's working conditions intolerable.

A constructive discharge qualifies as an adverse employment action.  See Durley v. APAC, Inc., 236 F.3d 651, 657 (11th Cir. 2000).  To establish a constructive discharge, a plaintiff must show that "working conditions were so

7

intolerable that a reasonable person in her position would have been compelled to resign." Poole v. Country Club of Columbus, Inc., 129 F.3d 551, 553 (11th Cir. 1997) (quotation marks omitted). This objective standard sets a high threshold; it requires a plaintiff to show harassment that is more severe or pervasive than the minimum level required to establish a hostile working environment. See Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1231 (11th Cir. 2001) (citing Landgraf v. USI Film Prods., 968 F.2d 427, 430 (5th Cir. 1992)).

We have "required pervasive conduct by employers before finding that . . . a constructive discharge occurred." Hipp, 252 F.3d at 1231; see also Bryant v. Jones, 575 F.3d 1281, 1289–90, 1298–99 (11th Cir. 2009) (holding that plaintiff established constructive discharge claim with evidence that her employer "was abusive . . . on numerous occasions, including an interaction where he appeared ready to assault [the plaintiff] physically" and severely restricted the plaintiff's responsibilities); Poole, 129 F.3d at 553 (holding that plaintiff submitted sufficient evidence to establish constructive discharge claim when she was "[s]tripped of all responsibility, given only a chair and no desk, and isolated from conversations with other workers"). Other circuits take a similar approach. See Watson v. Nationwide Ins. Co., 823 F.2d 360, 361 (9th Cir. 1987) ("[I]n general, a single isolated instance of employment discrimination is insufficient as a matter of law to support a finding of constructive discharge.") (quotation marks omitted); Bristow

v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985) ("An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers. He is not, however, guaranteed a working environment free of stress."). In this case, Menzie failed to submit evidence of pervasive conduct that would be sufficient to establish a constructive discharge. She points to a single incident in which Lang criticized her work performance and disability during a forty-five minute one-on-one meeting. Although we do not condone the statements Lang allegedly made, this single incident is insufficient to establish the pervasive conduct necessary to show a constructive discharge. A reasonable person in Menzie's situation would not have felt compelled to resign under such circumstances.[7] Accordingly, the district court did not err in granting summary judgment to Ann Taylor on Menzie's ADA and FCRA claims.[8]

III.

---

[7] Menzie's own behavior supports this conclusion. Three days after their April 21st meeting, Menzie told Lang that she would continue working at Ann Taylor, and only after having a change of heart did she resign two days later.

[8] Menzie's argument that the law does not require an aggrieved party to engage in futile behavior to prevail in a discrimination suit relies on case law that is inapposite. In the cases she cites, courts allowed plaintiffs to argue that they were discriminatorily denied job opportunities for which they did not formally apply because the employers had entrenched and systemic discriminatory policies and practices that made the plaintiffs ineligible for those positions. See, e.g., E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1274 (11th Cir. 2002); Sagers v. Yellow Freight Sys., Inc., 529 F.2d 721, 727–28 (5th Cir. 1976). In contrast, Menzie already had her job with the defendant and there is no allegation or evidence of systemic and entrenched discrimination at Ann Taylor.

Menzie also argues that harassment that creates a hostile work environment is actionable under the ADA and FCRA. She claims that the district court erred in concluding that she did not state such a claim in her initial complaint. She contends that she properly asserted a claim for hostile work environment simply by describing her forty-five minute meeting with Lang in the original complaint, and that requiring her to explicitly assert a hostile work environment claim in her complaint would elevate "form over substance."

Under the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. If a plaintiff seeks to pursue new claims against a defendant, she must amend her complaint to assert those other claims. See, e.g., Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1297 (11th Cir. 2006); Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004). The law is well-settled in this circuit that "[a] plaintiff may not amend her complaint through argument in a brief opposing summary judgment." Am. Fed'n of State, Cnty. & Mun. Employees Council 79 v. Scott, 717 F.3d 851, 863 (11th Cir. 2013); Miccosukee Tribe of Indians of Fla. v. United States, 716 F.3d 535, 559 (11th Cir. 2013). Instead, at the summary judgment stage, a plaintiff seeking to assert a new claim must amend her complaint pursuant to Federal Rule of Civil Procedure 15(a). Miccosukee Tribe, 716 F.3d at 559; Flintlock Constr. Servs.,

LLC v. Well-Come Holdings, LLC, 710 F.3d 1221, 1228 (11th Cir. 2013).  "[I]t goes without saying that [a] court is barred from amending a plaintiff's [complaint]" sua sponte because "the court may create the impression that it has become the plaintiff's advocate."    Miccosukee Tribe, 716 F.3d at 559.  In the present case, Menzie's complaint never set out a hostile work environment claim.[9] The words "hostile work environment" never even appear in her complaint.  Instead, without ever amending her complaint, Menzie asserted this claim for the first time in opposition to Ann Taylor's summary judgment motion.  This was improper.  As a result, the district court correctly determined that Menzie never stated a hostile work environment claim.[10]

For the reasons explained above, the district court properly granted Ann Taylor summary judgment on all of Menzie's claims.

**AFFIRMED**.

---

[9] We have never held in a published opinion that a hostile work environment claim is available under the ADA.  We do not decide that issue today because Menzie never asserted such a claim.

[10] Menzie's suggestion that Ann Taylor conceded that she asserted a hostile work environment claim because one of its many affirmative defenses related to "hostile work environment discrimination" is also meritless.  A plaintiff bears the burden of asserting all claims to relief that she seeks.  Fed. R. Civ. P. 8.  Menzie's argument would put defendants in an untenable position.  They would be forced to choose between constructively asserting new claims for a plaintiff by raising all conceivable affirmative defenses or raising fewer affirmative defenses than they could at the risk of waiving defenses not mentioned in the answer.

11