substantially limits the major life activity of either "working" or "performing manual tasks." These are separate inquiries, as the court implicitly concedes in seeking to distinguish this case from *McKay*. Williams has not shown a substantial limitation in working, because the inability to perform a single, particular job is not a substantial limitation, and she has not demonstrated that there is a broader class of jobs from which her impairment disqualifies her. Nor has Williams shown a substantial limitation in performing manual tasks, because her limitation is mostly confined to a subset of job-specific tasks.

I therefore respectfully dissent.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0287A (6th Cir.)
File Name: 00a0287a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————

ELLA WILLIAMS,
 *Plaintiff-Appellant,*

  *v.*      No. 99-5234

TOYOTA MOTOR
MANUFACTURING,
KENTUCKY, INC.,
 *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 97-00135—Henry R. Wilhoit, Jr., Chief District Judge.

Argued: February 1, 2000

Decided and Filed: August 29, 2000

Before: MERRITT, BOGGS, and MOORE, Circuit
Judges.

————————

**COUNSEL**

**ARGUED:** Leslie Rosenbaum, ROSENBAUM & ROSENBAUM, Lexington, Kentucky, for Appellant. Jeffrey A. Savarise, GREENEBAUM, DOLL & McDONALD, Louisville, Kentucky, for Appellee. **ON BRIEF:** Leslie

Rosenbaum, ROSENBAUM & ROSENBAUM, Lexington, Kentucky, for Appellant. Jeffrey A. Savarise, Katherine Ann Hessenbruch, GREENEBAUM, DOLL & McDONALD, Louisville, Kentucky, John A. West, GREENEBAUM, DOLL & McDONALD, Covington, Kentucky, for Appellee.

MERRITT, J., delivered the opinion of the court, in which MOORE, J., joined. BOGGS, J. (pp. 9-12), delivered a separate opinion concurring in part and dissenting in part.

———————————————

**AMENDED OPINION**

———————————————

MERRITT, Circuit Judge. In this case under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, plaintiff Ella Williams was transferred by the defendant auto manufacturer to the paint inspection section of the defendant's quality control operation in its Kentucky assembly plant because the manual tasks Williams had been performing on the assembly line using pneumatic tools had caused her to develop carpal tunnel syndrome and tendinitis in her hands and arms. Williams then spent approximately three years inspecting cars on the assembly line for defective paint and manually wiping down each newly painted car as it passed on the conveyor. Taking the facts in the light most favorable to the plaintiff, as we must when the district court has granted summary judgment for the defendant-employer, Williams' job duties were then expanded to include another job in the paint inspection section requiring her to grip a block of wood with a sponge attached to the end and wipe down the passing cars with a highlight oil at the rate of approximately one car per minute. In addition to gripping the block of wood, this new work required Williams to keep her hands and arms up around shoulder height repetitively over several hours. Her ligament and muscle problems reappeared in a more severe form as a result of the new job, with tendinitis now in her shoulders and neck as well. As a result, Williams asked her employer to assign her back to her former jobs within the paint inspection section. The employer refused according to

Mich. 1996), *citing McKay*, 878 F. Supp. 1012, 1014-15, *and Fink v. Kitzman*, 881 F. Supp. 1347, 1377 (N.D. Iowa 1995). Likewise, another plaintiff failed to present a triable issue on whether her carpal tunnel syndrome "substantially limits" the major life activity of caring for herself despite "the routine tasks that she must perform with adjustment, including: carry groceries only in light bags; carry laundry in small loads; obtain assistance to move furniture, open cans; properly make a bed. She cannot 'effectively' brush her teeth or hair and experiences discomfort in gripping the steering wheel while driving a car." *Terrell v. USAir, Inc.*, 955 F. Supp. 1448, 1453 (M.D. Fla. 1996), *citing Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir. 1995), *aff'd*, 132 F.3d 621 (11th Cir. 1998). Measuring Williams's limitation against plaintiffs claiming similar limitations on other major life activities, she does not appear disabled. If McKay, despite some diminution in ability, is not "substantially limit[ed]" from working, as that term is defined in 29 C.F.R. § 1630(2)(j)(1-3), I fail to see how Williams, who has some comparable diminution in performing manual tasks, *is* so limited. By defining the standard for a substantial limitation on "performing manual tasks" far less stringently than the standards for "caring for oneself" and "working" have been defined, the court appears to undercut *McKay* and its progeny.

More importantly, it seems to me that if considering the concept of working is only a "last resort," the opinion today mistakenly takes what is here primarily a *subset* of abilities related to working, the ability to "perform manual tasks," and erroneously treats a partial limitation there as substantially limiting a major life activity. The court states that "the plaintiff must show that her manual disability involves a 'class' of manual activities affecting the ability to perform tasks at work" in order to be disabled. Slip op. at 4. This description of the plaintiff's burden in defeating summary judgment conflates (and erodes) the standards for demonstrating a substantial limitation on "working" and on "performing manual tasks." To defeat summary judgment as to the existence of a disability, Williams must demonstrate a genuine issue of material fact that her impairment

major life activity of working. In particular, this court has held that the inability to perform a single, particular job does not constitute a substantial limitation on working. *See Gilday v. Mecosta County*, 124 F.3d 760, 767 (6th Cir. 1997) (Kennedy, J., concurring in part and dissenting in part) (collecting cases); *Cf. Sullivan v. River Valley Sch. Dist., et al.*, 197 F.3d 804, 811 (6th Cir. 1999) (holding that "a mere deterioration in performance at a single, particular job cannot constitute a disability").

Therefore, the court decides to look instead to the major life activity of "performing manual tasks." *See* 29 C.F.R. § 1630.2(i). As does the concept of working, the activity of "performing manual tasks" raises the question just how much of a diminution in that ability constitutes a disability. Certainly the record evidence shows that Williams can perform many manual tasks, beginning, most obviously, with the wiping task that she already had been doing prior to her newest assignment. In addition, the record shows that she can perform the manual tasks of brushing her teeth, laundering her clothes, and doing some driving. In fact, as the court's opinion again correctly notes, Williams's difficulty is almost exclusively with the inability to do manual tasks that "require the gripping of tools and repetitive work with hands and arms extended at or above shoulder levels for extended periods of time." Slip op. at 4-5.

I see no citations in the court's opinion, either to regulations or to cases, indicating that such a specific and partial limitation is considered a disability with regard to the major life activity of "performing manual tasks." In one prior case in which a plaintiff with carpal tunnel syndrome claimed a substantial limitation in his ability to perform manual tasks, the claim was rejected because "plaintiff could work at Stage performing the manual tasks of slicing and chopping food, installing locks, and fixing various items at Stage for [only] eight hours per day . . . [which] type of impairment does not constitute a significant restriction on plaintiff's ability to perform manual tasks or any other major life activity." *Shpargel v. Stage & Co.*, 914 F. Supp. 1468, 1474 (E.D.

Williams, but the employer disputes this fact. The central question in this case is whether the employer violated the ADA by refusing to accommodate Williams by allowing her to return to her former, less strenuous work within paint inspection. The district court granted summary judgment against the plaintiff primarily on the ground that she does not have a "disability," as defined in the Act, and therefore is not covered by the Act. The key issue before us is simply whether plaintiff's physical difficulties in using her hands, arms and shoulders, as required by her new job within paint inspection, constitute a "disability." In other words, should Williams' inability to perform certain manual tasks bring her within the coverage of the Act. Williams also claims that the defendant violated the ADA by terminating her due to her disability. The district court found that Williams failed to make a prima facie case with respect to her wrongful termination claim, because Williams was completely restricted from doing any kind of work at the time of her termination and therefore could not be a qualified individual under the ADA.

The ADA is unclear as to when it should be applied to protect an employee, as the Supreme Court recently suggested in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139 (1999). The Act provides that the employer may not "discriminate against a qualified individual with a disability because of the disability . . . in regard to . . . hiring, advancement, or discharge of employees, employees compensation, job training, and other terms . . . of employment." § 12112(a). The phrase "qualified individual with a disability" is defined as a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." § 12111(8). In the crucial section in the litigation before us, the Act defines the word "disability" as follows:

(A) A physical or mental impairment that *substantially limits one or more of the major life activities* of such individual;

(B)  A record of such impairment; or

(C)  Being regarded as having such an impairment.

§ 12102(2) (emphasis added).

The EEOC in its regulations interpreting the ADA and the Supreme Court in *Sutton* have said that the language in the definition of disability that the impairment in question must "substantially limit[] one or more of the major life activities" requires for the major life activity of "working" that the individual be unable to perform a class or broad range of jobs. The analysis must be class based. "One must be precluded from more than one type of job," i.e., "a substantial class of jobs." *Sutton*, 119 S.Ct. at 2151. The plaintiff here asserts primarily that her impairments disable her from performing manual tasks,[1] a different disability from "working," the disability at issue in the *Sutton* case. It would appear, nevertheless from the language of the Act, the EEOC's interpretation and the Supreme Court's analysis in *Sutton* that in order to be disabled the plaintiff must show that her manual disability involves a "class" of manual activities affecting the ability to perform tasks at work.

In this case, taking the evidence in the light most favorable to the plaintiff, we conclude that the plaintiff's set of impairments to her arms, shoulders and neck are sufficiently disabling to allow the factfinder to find she crosses the threshold into the protected class of individuals under the ADA who must be accorded reasonable accommodation. Her ailments are analogous to having missing, damaged or deformed limbs that prevent her from doing the tasks associated with certain types of manual assembly line jobs, manual product handling jobs and manual building trade jobs (painting, plumbing, roofing, etc.) that require the gripping of

---

[1] Although Williams has also claimed that she is substantially limited in the major life activities of lifting and working, in addition to manual tasks, her counsel conceded during oral argument that Williams' strongest claim pertained to the major life activity of performing manual tasks.

---

## CONCURRING IN PART, DISSENTING IN PART

---

BOGGS, Circuit Judge, concurring in part and dissenting in part. I concur in the court's judgment on the non-ADA portions of this case. I also agree with the court's citation of the Supreme Court in *Sutton* that "there may be some conceptual difficulty" in dealing with the definition of work as a "major life activity" in ADA cases. Slip op. at 5, *quoting Sutton v. United Airlines*, 119 S. Ct. 2139, 2151. However, because I believe that the court's attempts to deal with this conceptual difficulty are flawed, I respectfully must dissent from its interpretation of the ADA.

The plaintiff in this case can do many things that would be considered "work" and many things that would be considered "manual tasks." At the same time, Ms. Williams has difficulty with some other activities that would fall into each category. Toyota had already accommodated Williams, after she had complained of some limitations, by assigning her to a subset of the tasks generally performed by a worker in the paint inspection unit. Specifically, she was assigned two of the four jobs usually given to such a worker —inspecting the assembly and paint jobs and, as the court correctly notes, "manually wiping down each newly painted car." Toyota later asked her to perform a third job (though still not all four) of those jobs usually assigned to someone in her position. This new task also required her to "wipe down the passing cars," but apparently this wiping was performed with a tool requiring more gripping, and at a greater height than in her existing tasks.

This task caused Williams considerably more physical difficulty. Of course not every amount of physical difficulty with any one task will be considered a disability. As the court discerns, under *McKay* and under other decisions of this and other courts, this inability to perform certain types of tasks would not likely constitute being disabled with regard to the

brief or at oral argument. Moreover, as the district court noted, Williams testified that on December 6, 1996, her last day of work at the assembly plant, she was placed under a no work of any kind restriction by one of her doctors and that she was still under this restriction nearly nine months after she stopped working at the assembly plant. Williams' contention on appeal that this fact is actually a matter of dispute is unpersuasive, as a review of Williams' deposition transcript reveals that she unequivocally stated that she was restricted at the time of her termination and up until at least nine months later from doing any work of any kind, not even office jobs. Even if Williams was wrongfully terminated on January 27, 1997, within the 12-week period covered by the FMLA, she has failed to direct this court to any specific evidence supporting her claim that she was mistaken about her work restrictions when she gave her deposition and that she could have returned to work eventually. *Cf. Plant v. Morton Int'l, Inc.*, – F.3d --, 2000 WL 572458, at *4-5 (6th Cir. May 12, 2000) (holding that an employee's inability to return to work within twelve weeks did not foreclose his FMLA claim, where he could have returned to work eventually and the employer failed to give notice that his FMLA leave time had begun to run.) Williams therefore cannot demonstrate that she was entitled to reinstatement under § 2617.

Accordingly, we REVERSE the district court's ruling as it pertains to the plaintiff's ADA claim for failure to accommodate and REMAND for further proceedings, but AFFIRM the district court's ruling on Williams's FMLA claim and her claim for wrongful termination.

tools and repetitive work with hands and arms extended at or above shoulder levels for extended periods of time.

The fact that Williams can perform a range of isolated, non-repetitive manual tasks performed over a short period of time, such as tending to her personal hygiene or carrying out personal or household chores, does not effect a determination that her impairment substantially limits her ability to perform the range of manual tasks associated with an assembly line job. In addition, looking at all of the evidence most favorably to the plaintiff, the duration of Williams' impairment, as well as the expected permanent impact of it, are inferrable from the permanent work restrictions prescribed by Williams' treating physicians. As a result, we conclude there is sufficient evidence to support a finding that Williams was substantially limited as to a major life activity and that the district court's grant of summary judgment for the defendant was inappropriate.

Because we conclude that Williams is substantially limited in performing manual tasks, we do not need to determine whether Williams is substantially limited as to the major life activities of lifting or working. Moreover, as to the major life activity of working, the case of *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369 (6th Cir. 1997), is distinguishable from the case at hand. *McKay* was decided before the Supreme Court recognized in *Sutton* that "there may be some conceptual difficulty in defining 'major life activities' to include work, for it seems to argue in a circle to say that if one is excluded, for instance, by reason of [an impairment, from working with others] . . . then that exclusion constitutes an impairment, when the question you're asking is, whether the exclusion itself is by reason of handicap." 119 S.Ct. at 2151 (internal citation omitted). The *Sutton* Court further noted that "even the EEOC has expressed a reluctance to . . . include working and has suggested that working be viewed as a residual life activity, considered, as a last resort, *only* '[i]f an individual is not substantially limited with respect to *any other* major life activity.'" *Id.* (quoting 29 C.F.R. pt. 1630, App. § 1630.2(j)) (emphasis in original).

In this case, the plaintiff's claim is not based solely on the difficult concept that she is disabled as to work generally, but rather, includes the rather simple concept that she is disabled as to performing manual tasks because she suffers from a severe impairment to her limbs, shoulders and neck that seriously reduces her ability to perform the manual tasks that are job-related. Ultimately, *McKay* is distinguishable from this case for the same reason that *Sutton* is, in that these cases only turned on the "difficult concept" of working which is viewed as a "last resort." The concept of "manual tasks" requires a disability analysis to come before the life activity of working is considered and includes looking at a person's ability to use their limbs in a way called for by a broad range or class of manual activities that, as in this case, require the gripping of tools and arms to be kept overhead or at shoulder level repetitively for an extended period of time. Here, the impairments of limbs are sufficiently severe to be like deformed limbs and such activities affect manual tasks associated with working, as well as manual tasks associated with recreation, household chores and living generally. The notion of "class" advocated by the *Sutton* Court can be based on a more limited concept than "working," and can be based on limits on manual activities which can affect other major life activities. Moreover, we believe Williams's impairment is more severe than the *McKay* plaintiff's, rendering Williams "[s]ignificantly restricted as to the condition, manner or duration under which [she] can perform [manual tasks] as compared to the condition, manner, or duration under which the average person in the general population can perform [them]." 29 C.F.R. § 1630.2(j)(1)(ii).

Because we conclude that Williams has made the necessary showing under § 12102(2)(A) that she suffers from an actual impairment that substantially limits a major life activity to survive a motion for summary judgment, we need not address her claims that she was disabled because she had a record of a qualifying impairment, pursuant to § 12102(2)(B), or that, in the alternative, she was disabled because she was regarded as having such an impairment, pursuant to § 12102(2)(C). As to Williams's wrongful termination claim, however, we agree

with the district court that, because Williams is restricted completely from working, she cannot claim to be a 'qualified individual with a disability' within the meaning of the ADA; therefore, that claim must fail.

Although we have concluded that Williams is disabled and that there is a triable issue of fact as to whether the defendant auto manufacturer failed to reasonably accommodate her disability, it is important to note that Williams must still demonstrate the remainder of her prima facie case, and that the defendant is still free to raise any viable defenses as to why it was unable to accommodate Williams, such as undue hardship and business necessity. To the extent that there is concern that employers may be required to answer in court "for every employment practice that draws distinctions based on physical attributes," nothing in this opinion should be construed to undermine an employer's ability to rely on an appropriate affirmative defense. *Sutton*, 119 S.Ct. at 2160 (Stevens, J., dissenting).

In regard to Williams's FMLA claim, we conclude that the district court properly granted summary judgment in favor of the defendant. The FMLA entitles an eligible employee with a serious health condition to 12 work weeks of unpaid medical leave, 29 U.S.C. § 2612(a)(1)(D), and if an employee's FMLA rights are violated, then they are entitled to recover certain damages. § 2617. On appeal, Williams does not dispute the defendant's claim that, assuming *arguendo* she was improperly denied FMLA leave, she has suffered no damages.[2] Williams has pointed to no economic benefits that she has lost from the denial of FMLA leave. In fact, Williams offered no evidence of any damages in her

---

[2] We do not decide whether 29 U.S.C. § 2617(a)(3), which grants attorney fees and costs to a successful plaintiff, applies to a case such as this one, where the plaintiff might be able to show a violation of the FMLA but cannot obtain a monetary judgment or injunctive relief. Although the district court addressed the applicability of § 2617(a)(3) in its memorandum opinion, the plaintiffs do not press this issue on appeal, and we therefore do not consider it.