*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0133P (6th Cir.)
File Name: 01a0133p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DANA C. HENDERSON,
       *Plaintiff-Appellant,*

    *v.*

ARDCO, INC.,
       *Defendant-Appellee.*

No. 99-6407

Appeal from the United States District Court
for the Western District of Kentucky at Bowling Green.
No. 97-00177—Joseph H. McKinley, Jr., District Judge.

Argued: December 5, 2000

Decided and Filed: April 24, 2001

Before: BOGGS and GILMAN, Circuit Judges; and
BECKWITH, District Judge.[*]

---

## COUNSEL

**ARGUED:** Steven D. Downey, THE LAW OFFICES OF
STEVEN D. DOWNEY, Bowling Green, Kentucky, for
Appellant. C. Laurence Woods III, BROWN, TODD &

---

[*] The Honorable Sandra S. Beckwith, United States District Judge for
Southern District of Ohio, sitting by designation.

HEYBURN PLLC, Louisville, Kentucky, for Appellee. **ON BRIEF:** Steven D. Downey, THE LAW OFFICES OF STEVEN D. DOWNEY, Bowling Green, Kentucky, Glenn D. Parrish, Bowling Green, Kentucky, for Appellant. C. Laurence Woods III, BROWN, TODD & HEYBURN PLLC, Louisville, Kentucky, for Appellee.

---

### OPINION

---

BOGGS, Circuit Judge. In this diversity action, Dana Henderson appeals a grant of summary judgment to her employer, Ardco, Inc. ("Ardco"). Henderson alleges that Ardco violated KY. REV. STAT. ANN. §§ 342.197 and 344.040 (Michie 1997), which forbid retaliatory discharge for filing a claim for workman's compensation and employment discrimination against "a qualified individual with a disability." Below, Henderson also alleged gender discrimination, but has now abandoned this claim on appeal. Henderson sought $500,000 in past and future income and punitive damages, along with other monetary relief. For the reasons that follow, we reverse the district court's judgment regarding Henderson's disability claim.

### I

Ardco runs a manufacturing facility in Elkton, Kentucky, Ms. Henderson's home, where it manufactures doors, particularly for commercial refrigerators. Henderson began working there in 1985, and for several years worked on the assembly lines making doors and doorframes. Henderson eventually obtained a welding position, for which she was paid an hourly wage of $9.66 in 1994. On July 14, 1994, Henderson injured her back and was forced to leave Ardco to recuperate. On Feb. 3, 1995, she returned with a doctor's note that included restrictions on her physical capacities; Ms. Henderson was not to stoop or bend, and she was not to lift

### III

We AFFIRM the district court's summary judgment that there was no genuine issue of material fact that the plaintiff was not the subject of retaliatory discharge for filing a workman's compensation claim. However, we hold that the district court erred in granting summary judgment to the defendant with regard to whether the plaintiff was regarded as disabled, and we therefore REVERSE the judgment entered below and REMAND the case to the district court for further proceedings consistent with this opinion.

to throw this issue into doubt.  As Henderson has made at least an initial showing that she was regarded as disabled within the meaning of the developing caselaw on this term, and she has satisfied the other elements of an ADA claim to show a "genuine issue for trial," the district court's grant of summary judgment must be reversed.

### Retaliatory Discharge

Henderson also claims that after filing for workman's compensation, she was discharged in retaliation, in violation of KY. REV. STAT. ANN. §§ 342.197(1).  Under Kentucky law, the "minimum" burden on a plaintiff claiming retaliation is to provide evidence she (1) "engaged in statutorily protected activity," (2) was discharged, and (3) "there was a connection between the protected activity and the discharge." *Willoughby v. Gencorp, Inc.*, 809 S.W.2d 858, 861 (Ky. Ct. App. 1990). The third element of the test requires a showing that the claim was a "substantial and motivating factor but for which the employee would not have been discharged." *First Property Mgmt. v. Zarebidaki*, 867 S.W.2d 185, 188 (Ky. 1993).

As the district court found, Henderson fails the third element of this test, having provided insufficient evidence for a trier of fact to find a connection between her workman's compensation claim and her discharge.  The analysis of her disability claim above, as well as the great weight of evidence, indicates Henderson would have been discharged under the "100% healed rule," at least from her welding position, regardless of whether she had filed her workman's compensation claim.    The only affirmative evidence Henderson gives that her exercise of her right was a substantial and motivating factor is the testimony of Donald Hood, an employee who apparently was threatened  with discharge by his supervisor in 1991, after filing a workman's compensation claim.  Nothing actually happened to Hood, however.  Henderson has admitted on deposition that she had no facts that led her to believe she was fired because of her workman's compensation claim. This evidence is insufficient to survive a motion for summary judgment.

more than 25 pounds or "40 pounds frequently."[1]  Henderson was not allowed to return to work, and was told by plant manager Ed Baumann that: "You know what company policy is . . . you have to be 100 percent to work here."  Ardco's "100% healed rule" appears to have been well-known and consistently applied, at least with regard to lifting restrictions, and is assumed to exist for purposes of summary judgment.

In July 1995, Henderson wrote to Ardco asking for any work consistent with her restrictions, and was told that Ardco had no "light duty work which you can perform with your medical restrictions."  She claims there were jobs available she was not told about, but she never attempted to apply for any specific jobs at Ardco.  Henderson did seek employment elsewhere, briefly working at the American Heritage factory and for a longer period at the local Piggly-Wiggly grocery, where she was employed as a cashier.  In May 1998, following the filing of the present action in August 1997, Henderson's restrictions were altered to allow her to "bend at the waist when needed" although her lifting restrictions remained.  In June 1998, Henderson was  rehired by Ardco, where she works today, although not as a welder.

Originally, Henderson's pleadings asserted that when Baumann denied her reemployment, she in fact was disabled having a "permanent partial disability." (Compl. ¶ 7).  Her current position appears to be that in 1995 she was "ready, willing and able to return to work as a welder." (Pl.'s Resp. to Def. Mot. Summ. J.).  She nowhere asserts that she sought an accommodation in her job as welder or otherwise, beyond her July 1995 letter seeking employment consistent with her medical restrictions.

In resisting Ardco's motion for summary judgment, Henderson asserted (and reasserts on appeal) that the requirements of the jobs filled by Ardco after July 1995 were

---

[1]This restriction was eventually clarified to mean that she could lift no more than 25 pounds frequently and no more than 40 pounds infrequently.

consistent with her medical restrictions, as was her original job.   A document obtained from Ardco describing the "essential job functions" for each position at the plant offers limited support for Henderson's contention.   Certain positions, such as "cut molding job" or "vinyl punch press job" require "ability to bend;" "milling" jobs require both the "ability to bend" and "ability to stoop."   However, several other jobs in Ardco's machine shop, such as "materials handling job" or "polishing/feeding job" are listed as having neither of these requirements.   Lifting requirements are also specified in the "essential job functions."   For Henderson's original welding job, the listed lifting requirement is the capacity to lift "forty to sixty pounds intermittently (can be shared)" -- whether or not this is within Henderson's restrictions is ambiguous and disputed by the parties.[2]   The other jobs in the machine shop, including those without stooping/bending restrictions, have listed weight requirements of no greater strain than "forty pounds occasionally," apparently consistent with Henderson's restrictions. Some jobs have requirements as low as "eight pounds intermittently" ("cutting door widths job") or "one to fifteen pounds intermittently" ("frame cutting job").

Henderson claims that despite her ability to work, Ardco perceived her as having a disability and that its "100% healed rule" is per se discriminatory under KY. REV. STAT. ANN. § 344.040 (protecting "a qualified individual with a disability").   Henderson also applied for workman's compensation following her accident.   She believes this application motivated, at least in part, Ardco's failure to re-employ her until June 1998, which is the basis of her claim

---

[2] It should noted, however that this job description sheet uses the term "occasionally" to indicate more infrequent strenuous exercise; even if always shared, the welding restrictions would have required Henderson to exert up to 30 (60/2) pounds of force on an intermittent (roughly equivalent to "frequent") basis, and this would have been outside the range of her restrictions. The disposition of our case, nonetheless, does not turn on the definitive resolution of this question for the reasons that follow.

of the 100% rule is its role in determining the threshold issue of perceived disability. *See Burns*, 222 F.3d at 253 (stating that a plaintiff's "ability to show that he is 'disabled' within the meaning of the statute is a 'threshold requirement' for recovery under the Act").   Where the 100% rule is applied to mildly impaired persons to exclude them from a broad class of jobs, it may be treating them as disabled even if they are not, thereby qualifying them for protection under the ADA and parallel statutes, and activating the individual assessment rule.   The variability of the impairment-relevant job requirements within the business applying the 100% rule is thus important, because it indicates the breadth of the class the employer perceives when the employer applies the rule.[6]

We are not, as the court claimed to be in *Ross*, wholly at sea as to the subjective state of mind of the employer regarding the substantiality of the class implicated by denying the plaintiff employment. Plaintiff has brought forward evidence that the defendant perceived there was no job for her at the Ardco plant, and this gives an indication of the employer's perception about her suitability for a class of relevantly similar employment.  Further factual inquiry must determine whether the range of essential job functions at the plant, in actuality as well as on paper, was roughly equivalent to the class of "manufacturing jobs."  If, in fact, Ardco knew that all jobs in the plant had significant lifting, bending, or stooping requirements beyond those consistent with manufacturing jobs generally extant in the Elkton area, contra their written descriptions, then their actions may be permissible.  However, plaintiff seems to have done enough

---

[6] Hence if the employer had only a set of relatively physically demanding jobs available and prevented a plaintiff from working these jobs, the employer would not necessarily be "regarding" the plaintiff as disabled, even if the plaintiff could show that the excluded employment was in fact within his capacities. The variability and type of jobs available goes to the narrowness of the employment class and whether the individual is disabled, rather than to whether they were qualified.  For the disability element, the plaintiff must show a perception of an impairment-produced "status which is . . .  beyond the range of 'normal.'" *Andrews v. State of Ohio*, 104 F.3d 803, 810 (6th Cir. 1997).

including a restriction to lifting no more than 25 pounds. After having been referred to in an internal company memo as a "back case" and a "problem person" that ought to be brought to "termination status," Ross was discharged for malingering and failing to meet his sales quotas. *See* 237 F.3d at 707. Reversing the district court, we found there was a genuine issue as to whether Ross was perceived as disabled, although we acknowledged that "[p]roving that an employee is regarded as disabled in the major life activity of working takes a plaintiff to the farthest reaches of the ADA." *Id.* at 709. In *Ross*, unlike here, there was little evidence about the size and nature of the class of jobs the employer thought the plaintiff incapable of performing, but the *Ross* court nonetheless left the question of the substantiality of the perceived class to the jury. *Ibid. Cf. Duncan v. Washington Metro. Area Trans. Auth.*, 240 F.3d 1110, 1115 (D.C. Cir. 2001) (en banc) (overturning jury verdict in favor of plaintiff with 25-pound lifting restriction, and requiring proof regarding the number of other jobs in the same geographical area that plaintiff was excluded from).[5]

Plaintiff urges us to find the "100% healed" rule was a per se violation of the ADA, citing *MacGregor v. National R.R. Passenger Corp.*,187 F.3d 1113, 1116 (9th Cir. 1999) (collecting cases). She emphasizes the fact that she never received any individual assessment for her position, as is required by the ADA. *See Holiday v. City of Chattanooga*, 206 F.3d 637, 643 (6th Cir. 2000). This foreshortens the inquiry, however, as the district court correctly perceived. All courts that have examined the question, including the one in *Hutchinson* and the district court here, agree that a 100% rule is impermissible as to a *disabled* person -- but one must first be disabled. On summary judgment, though, the importance

---

[5]We express no opinion on the consistency between *Duncan* and *Ross* as to the requirements for a plaintiff to survive summary judgment. Although Henderson has presented little evidence to show that manufacturing represents a significant portion of the jobs locally available to her, this will ultimately be part of her burden in showing she was perceived as "substantially impaired" in working in the Elkton area.

for retaliatory discharge under KY. REV. STAT. ANN. § 342.197.

The district court was troubled by the "100% healed rule" (labeling it "insensitive and repugnant") and Ardco's apparent unwillingness to assess employees individually for their capacity to perform work in the plant. However, it found Henderson's injury was not so great as to substantially impair her in any major life activities. The court also found that no genuine issue of material fact existed as to whether Ardco misperceived Henderson's condition as more severe than it was. As a consequence, it held Henderson was not and is not a person with a "disability," and granted summary judgment to Ardco on this claim as well as on Henderson's other claims. Henderson's timely appeal followed.

## II

### Standard of Review

On appeal, we review a grant of summary judgment de novo, using the same Rule 56(c) standard as the district court. *Hansard v. Barrett*, 980 F.2d 1059 (6th Cir. 1992). The moving party has the initial burden of proving that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### Disability Discrimination

We interpret Kentucky protections for the disabled consonant with the federal Americans with Disabilities Act. *Brohm v. JH Properties, Inc.*, 149 F.3d 517, 520 (6th Cir. 1998); *cf. Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1178 n.3 (6th Cir. 1996) (interpreting Michigan statute). In order to establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) that

he or she is "disabled" within the meaning of the ADA; (2) that he or she is "otherwise qualified" to perform the requirements of the job, with or without reasonable accommodation; and (3) that he or she has suffered an adverse employment decision because of the disability. *See Monette*, 90 F.3d at 1178.

Henderson has produced sufficient evidence to survive summary judgment on the second and third elements of this test. The relevant job descriptions and testimony by co-workers indicate that Henderson may have been qualified for her position in welding as well as for other jobs at Ardco. The record also supports the proposition that Henderson's employment was terminated because of her injured state, and that she was not rehired for the same reasons. These actions would constitute adverse employment decisions based on a disability – if Henderson's condition is considered a disability. All parties acknowledge it is this question, the first element of the test, that is the crux of the case.

A person is "disabled" for the purposes of the ADA if she:

(A) [has] a physical or mental impairment that substantially limits one or more of [her] major life activities ...;
(B) [has] a record of such an impairment; or
(C) [is] regarded as having such an impairment.

42 U.S.C. § 12102(2).

As noted, on appeal and at oral argument Henderson has abandoned the alternative claim that her restrictions were such that she was actually disabled, instead relying solely on the "regarded as" part of the ADA under 42 U.S.C. § 12102(2)(C). An individual can be regarded as having a disability if: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 489 (1999); *Ross v.*

We have also held that an individual may be disabled by a lifting restriction of 23 pounds, by being substantially impaired in the major life activity of working, if that restriction prevented him from performing "medium to heavy lifting and other forms of manual labor," and those jobs constituted the majority of the jobs for which that plaintiff is suited based on his age, education, and experience. *Burns v. Coca-Cola Enters. Inc.*, 222 F.3d 247, 253-54 (6th Cir. 2000) (finding plaintiff qualified as "disabled" under the ADA by an impairment that reduced by "at least 50% of the jobs" previously available to him). Similarly, Henderson appears to have raised a genuine issue of material fact that Ardco perceived her as unable to perform anything but "light duty" work, and that it perceived that medium to heavy manual labor constituted a majority of the jobs available to her based on her age, education and experience.

The interpretive guidance provided on "substantial limitation" of working also supports the view that this case is inappropriate for summary disposition. As an illustration, the EEOC indicates that "an individual who has a back condition that prevents the individual from performing any heavy labor job would be substantially limited in the major life activity of working because the individual's impairment eliminates . . . her ability to perform a class of jobs. This would be so even if the individual were able to perform jobs in another class, e.g., the class of semi-skilled jobs." 29 C.F.R. § 1630, App. at 353-54 (quoted in *Burns*, 222 F.3d at 254); *DePaoli v. Abbot Laboratories*, 140 F.3d 668, 672 (7th Cir. 1998) (quoting same language). Hence, with regard to the issue of perception, Baumann's acknowledgment that "right now she's working at the Piggly-Wiggly, so obviously she can do some things" does not show that Baumann did not perceive Henderson's capacity to work to be substantially limited. *See Burns*, 222 F.3d at 255.

Even more recently, we have, in *Ross*, had occasion to interpret an employer's perception of a back injury as disabling. Ross was a frozen-food salesman with a history of back trouble. He returned to work with physical restrictions,

had claimed that her tendinitis and carpal tunnel syndrome, causing her limited mobility and pain in using her neck, shoulders and arms, limited her in the major life activity of doing "manual tasks" (as well as the major life activities of lifting and working). We stated that her ability to do household manual tasks does not determine whether "her impairment substantially limits her ability to perform the range of manual tasks associated with an assembly line job." *Id.* at 843.

Understanding the holding in *Williams* is complicated because the court's judgment that Ms. Williams was physically disabled relied on how her impairments "seriously reduce[d] her ability to perform the manual tasks that are job-related." *Id.* at 844. This appears to combine assessment of Williams's impairment in manual tasks and her impairment in working, and inquiries into the existence of the requisite level of impairment should, as a general matter, be conducted in a separate and distinct fashion for each major life activity on which the plaintiff relies, especially in light of the need, when a plaintiff claims an impairment in the major life activity of working, for particular evidence on such matters as local economic conditions and the plaintiff's educational background. *See id.* at 846-47 (Boggs, J., dissenting) (noting that Williams had not demonstrated a substantial impairment in working, and rejecting the use of a subclass of work-related skills not subject to the limitations on "working" claims).

However, whatever one might say about the analytical structure underlying our rule, the law of this circuit is that someone like Ms. Williams is "disabled." If Ardco perceived Henderson to be approximately as impaired as Williams, then Ms. Henderson states a valid "regarded as" claim. Ardco's 100%-healed rule, may, for purposes of summary judgment, be interpreted as treating Henderson as incapable of work in a manufacturing operation. So construed, it appears to designate a level of impairment within the same range we have found as disabling in *Williams*.

*Campbell Soup Company*, 237 F.3d 701, 706 (6th Cir. 2001) (quoting *Sutton*). Henderson proceeds on the second theory, that Ardco mistakenly believed her restrictions substantially limited the major life activity of working. In a "regarded as" case, "it is necessary that a covered entity entertain misperceptions about the individual—it must believe . . . that one has a substantially limiting impairment when, in fact, the impairment is not so limiting. These misperceptions often 'resul[t] from stereotypic assumptions not truly indicative of . . . individual ability.'" *Sutton*, 527 U.S. at 489 (quoting 42 U.S.C. § 12101(7)); *see also Plant v. Morton Int'l Inc.*, 212 F.3d 929, 938 (6th Cir. 2000) (stating that a "regarded as" claim occurs when "an employee has an impairment that is not substantially limiting but is treated as substantially limiting").

The major life activities involved here include lifting and working. *See* 29 C.F.R § 1630.2(i) (specifically listing "working" and presenting a non-exclusive list that arguably could include lifting); *see also Thompson v. Holy Family Hosp.*, 121 F.3d 537 (9th Cir. 1997) (discussing lifting as a major life activity and restrictions necessary to show a substantial impairment in this activity). "Working," composed as it is of many activities, has been noted as a particularly problematic category for courts, requiring further elucidation. *Sutton*, 527 U.S. at 491-93; *see also McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir. 1997).

Where possible, it is preferable to identify another more specific impairment before considering ability to work. *Sutton*, 527 U.S. at 492. In this case, the more specific impairments perceived by the defendant are in Henderson's abilities to lift, bend, and stoop. Baumann acknowledged during deposition, for instance, that "[a]ll I did is looked at those weight restrictions." However, Ardco's "100% healed rule" purports to concern the ability to work, linking other physical impairments to this ability, and requiring us to focus on whether Ardco's perception of Henderson was such that they misperceived or treated her physical restrictions as

substantially limiting her ability to work when in fact they were not substantially limiting. *See Plant*, 212 F.3d at 938.

*Sutton* makes clear that in order to satisfy § 1202(2)(A), an individual must be "precluded from a substantial class of jobs." 527 U.S. at 491. *See also Murphy v. United Parcel Serv.*, 527 U.S. 516, 523 (1999) (stating that "to be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job"); 29 C.F.R. § 1630.2(j)(3)(i) (providing that "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major activity of working"). A "class of jobs" is defined as "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment." 29 C.F.R. § 1630.2(j)(3)(ii)(B).

The defendant is correct that the case of *Hutchinson v. United Parcel Serv.*, 883 F. Supp. 379 (N.D. Iowa 1995), tracks this one in several respects, but a closer analysis of *Hutchinson* suggests a distinction. In that case, a plaintiff with lifting restrictions alleged discrimination by means of UPS's similar "100% healed rule," claiming she had been "regarded as" disabled. As did the district judge here, the *Hutchinson* court considered the 100% rule outrageous,[3] but found the employee was insufficiently impaired to qualify as disabled, and that her employer did not perceive her as disabled. *Id.* at 395-96. The crucial distinguishing feature of this case comes on this latter point, however. The district court found the plaintiff had shown only that UPS believed her incapable of the narrow task of lifting "between 30 and 70 lbs." *Id.* at 396.

---

[3]The defendant in *Hutchinson* claimed to have, by the time of trial, rid itself of this policy on the advice of counsel. *See* 883 F. Supp. at 397.

In this case, however, plant manager Baumann stated, "there is not a job in the plant that her restrictions would not bump into." There are two ways to interpret Baumann's statement. One way, more favorable to the defendant, is that the written job descriptions are incomplete and that the reality of the shop floor is that workers using the frame saw and doing other jobs will actually have to bend or stoop or lift weights of greater than 25 pounds regularly or 40 pounds frequently, or at least that physical requirements are significantly understated by their written descriptions.[4] However, a second reading of Baumann's view is that he considers someone with physical restrictions unable to "make it" doing factory work, even if it is within the technical requirements of the worker's restrictions, and/or that he considers it too risky or problematic to employ workers with whom he has to be cautious not to push much beyond the essential functions of their job. This latter interpretation broadens the scope of the perceived disability and if proven, could constitute disability discrimination.

Even if Henderson shows that Ardco perceived her as unable to do a larger class of jobs, she must show that this larger class is sufficiently "substantial" to satisfy the rule in *Sutton*. Our recent case law on what qualifies as substantial appears to support Ms. Henderson's claim. Interpreting *Sutton*, the majority of a panel of this Court has held that the inability to perform the manual tasks associated with assembly line work may qualify as a disability under the ADA. *See Williams v. Toyota Motor Mfg., Kentucky, Inc.*, 224 F.3d 840, 844 (6th Cir. 2000), *cert. granted*, 69 U.S.L.W. 3481 (U.S. Apr. 16, 2001) (No. 00-1089) (reversing grant of summary judgment for employer-defendant). Ms. Williams

---

[4]If the requirements are eventually shown to be actually outside Henderson's restrictions, despite reasonable accommodation (which she never sought), then she would not be qualified, failing the second element of an ADA claim. An analytically distinct question occurs if the requirements were within her capacity but sufficiently strenuous and similar so as to narrow sufficiently the class of excluded jobs, and prevent Henderson from claiming the status of person with a "disability."