CLAY, Circuit Judge,
concurring in part and dissenting in part.
Although I concur in the judgment reached by the majority with respect to Plaintiffs FMLA and retaliation claims, I do not join in its analysis of the retaliation claims in view of the majority’s failure to analyze each retaliation claim separately. Additionally, I write separately to express my belief that Plaintiff has offered sufficient evidence to permit a reasonable jury to conclude that he was disabled within the meaning of the Rehabilitation Act and subjected to a hostile work environment on account of his disability. I would therefore reverse summary judgment on Plaintiffs hostile work environment claim and permit the jury to render judgment in the instant case.
I.
A person is disabled within the meaning of the Rehabilitation Act if he or she (1) has a “physical or mental impairment” that “substantially limits” a “major life activity,” (2) is regarded as having an impairment that “substantially limits” a “major life activity,” or (3) has a record of such an impairment. Mahon v. Crowell, 295 F.3d 585, 589 n. 2 (6th Cir.2002). Both “work” and the “performance of manual tasks” constitute major life activities and one is considered “substantially limited” in his or her ability to work or perform manual tasks, respectively, if he or she is unable to work in a broad class of jobs or perform a variety of tasks central to most people’s daily lives. Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 200-02, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002); Sutton v. United Air Lines, 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); Moorer v. Baptist Mem’l Health Care Sys., 398 *443 F.3d 469, 480 (6th Cir.2005). The relevant class of jobs is determined with reference to an individual’s skills and geographic location. Sutton, 527 U.S. at 491, 119 S.Ct. 2139.
In the instant case, Plaintiff does not contend that he is actually impaired but that his supervisor, Burgs, regarded him as substantially impaired in his ability to work and perform manual tasks due to his Tourette’s Syndrome. As evidence of Burgs’ perceptions, Plaintiff offers affidavits indicating that Burgs believed that Tourette’s Syndrome rendered Plaintiff unable to write legibly, give patient injections, and work the “cardex” filing system, activities which are necessary to nursing jobs and constitute manual tasks. Specifically, Burgs rated Plaintiff poorly on his communication skills in his yearly job evaluation because she considered his handwriting illegible, informed Plaintiffs coworker, Eleanor Gates, that she “wouldn’t want Jeff Gentry giving [her] a shot doing all of that shaking,” (J.A. at 167), and blamed Plaintiff for the disorganized state of the cardex. Additionally, Plaintiff has offered affidavit evidence that Burgs informed other nurses that Plaintiff was not fit to be a nurse, believed that patients were scared of Plaintiff because of his tics, and required other nurses to check Plaintiff’s work to insure that it was properly completed.
According to the majority, the evidence described above is insufficient to create any genuine issue of material fact as to whether Gentry was disabled because it does not demonstrate that Burgs believed Plaintiff was excluded from a broad class of jobs, as opposed to his particular job, or unable to perform a variety of tasks central to most people’s daily lives, as opposed to specific work related tasks. In reaching this conclusion, however, the majority ignores a line of case law in this Circuit which permits a jury to infer that an employer regards an employee as unable to perform a broad class of jobs from evidence that an employer regards an employee as unfit for his or her particular job. Moorer, 398 F.3d at 480; Henderson v. Ardco, 247 F.3d 645, 654 (6th Cir.2001). As this Court explained in Moorer:
[P]roving that an employee is regarded as disabled in the major life activity of working takes a Plaintiff to the farthest reaches of the ADA and that this question is embedded almost entirely in the employer’s subjective state of mind. This task is extraordinarily difficult because it is safe to assume employers do not regularly consider the panoply of other jobs their employees could perform, and certainly do not often create direct evidence of such considerations.
398 F.3d at 481. Accordingly, this Court concluded that the best evidence of whether an employer regards an employee as unable to perform a broad class of jobs is often evidence that the employer regarded the employee as unable to perform his or her specific job. Id. at 494. This inference is eminently logical inasmuch as an employer’s belief that an employee cannot perform his or her specific job necessarily indicates that an employer must also believe that the employee is unable to preform any similar job. See id. (“The fact that Baptist believed that Moorer’s alcoholism made him unable to perform his hospital administrator job, which required a broad range of managerial skills, permits the reasonable inference that Baptist believed that Moorer’s alcoholism rendered him incapable of performing a substantial number of managerial jobs.”) By analogy, this case law also permits a jury to infer that an employer regards an employee as unable to perform a variety of manual tasks central to most people’s daily lives from evidence that an employer regards *444 the employee as unable to perform work-related tasks.
The inference this Court recognized in Moorer renders summary judgment inappropriate in the instant case. There is no question that Burgs believed Plaintiff was unable to perform his job as nurse because of his tics. The evidence discussed above establishes that Burgs believed that Plaintiff could not give injections, work with patients, or communicate adequately to perform his job as a nurse. These skills are necessary to all nursing jobs, as well as many other jobs in the health care industry. Furthermore, the ability to communicate and work with people is essential to almost every job in existence. Inasmuch as Burgs’ belief that Plaintiff was unable to write legibly and frightened people implicates Plaintiffs ability to communicate and work with people more generally, evidence of such beliefs also supports the conclusion that Burgs regarded Plaintiff as unable to perform a broad class of jobs involving communication skills.
Similarly, the inference recognized in Moorer would allow a reasonable jury to conclude that Burgs regarded Plaintiff as unable to perform a variety of manual tasks central to most people’s daily lives. Although giving injections, writing legibly, and organizing a cardex are job related tasks that are not central to most people’s daily lives, a juror could easily infer from Burgs’ perception of Plaintiffs ability to perform these tasks that Burg also regarded Plaintiff as substantially impaired in his ability to perform other manual tasks that are central to most people’s daily lives. For example, if Burgs believed that Plaintiffs tics were sufficiently severe such that Plaintiff was unable to hold a pen or needle in a steady manner, Burg likely also believed that Plaintiffs tics were so severe that they made him unable to steer his car properly, place items in or take items out of the oven, and brush his teeth. All of these tasks require Plaintiff to hold an object in a steady manner without making jerking motions. Furthermore, all of these are central to most people’s daily lives. By granting Defendants’ motion for summary judgment on this issue, the district court improperly decided an issue of fact that should have been decided by the jury-
II.
Not only has Plaintiff offered sufficient evidence to allow a reasonable jury to find that he was disabled within the meaning of the Rehabilitation Act, he has also offered sufficient evidence to allow a reasonable jury to conclude that Burgs subjected him to a hostile work environment because of his disability. Plaintiff alleged in affidavit form that Burgs subjected him to the following adverse treatment on account of his tics:
1) gave him a below expectations performance evaluation;
2) understaffed his patient units;
3) prohibited him from using the conference room, while allowing other nurses to use the conference room;
4) made derogatory comments to him, including comments about his tics;
5) made derogatory comments about his tics to other staff, which comments were then relayed to him;
6) ordered other staff to stay away from him; and
7) required other nurses to check his work.
Affidavits of Summit employees Blanche Brown, Linda Higginbotham, Marquita Adkins, Evette Key, Eleanor Gates, Priscilla Myerson, Nancy Jewell, and James Hindsman support Plaintiffs allegations. According to all of these employees, Burgs treated Plaintiff much worse than any oth *445 er employee. She also instructed other employees to stay away from Plaintiff and treated them differently when they did not. Furthermore, the record contains substantial direct evidence that Burgs’ treatment of Plaintiff was due to his Tourette’s Syndrome, including the following statements from the affidavits of Higginbotham, Adkins, Key, and Myerson, respectively:
1) “ ‘[Stay] away from Jeff Gentry. His kind is not welcome here. I will tell you right now that I have been watching him and he is going down. It is only a matter of time, you don’t want to be around when it happens.’ ” (J.A. at 158);
2) “ T bet he scares the patients with those [tics].’ ” (J.A. at 161);
3) “B.J. Burgs has said that Jeff Gentry shouldn’t be a nurse because he has that Tourette’s disease, and has said many times that she is going to get him wrote up for anything she can to get rid of them .... [and that she] hates every time she has to sit there and watch him tic.” (J.A. at 166); and
4) “Savio said to B.J. Burgs ... *When we go to the deposition we should sit down and give Jeff the finger,’ and they both proceeded to imitate Jeffs uncontrollable movements, with their middle finger flipping the bird sign. They both began to laugh and make fun of Jeffs uncontrollable jerking movements. B.J. Burgs said, ‘Can you imagine what a patient might think, if he saw Jeff coming in to give him a shot? The patient might think that Jeff is having a seizure, and the patient would be scared straight.’ ” (J.A. at 169.)
Burgs’ treatment of Plaintiff caused Plaintiffs tics to worsen and eventually caused Plaintiff to take long-term disability.
In light of the extensive evidence of Burgs’ abusive conduct, summary judgment on Plaintiffs hostile work environment claim was not proper. Workplace harassment rises to the level of a hostile work environment where the harassment is “sufficiently severe or pervasive to alter the conditions of a [the victim’s] employment and create an abusive environment.” Meritor Savings Bank v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Severity is analyzed through a two-pronged approach: first, the atmosphere must be such that a reasonable person would find it abusive; and second, the plaintiff must subjectively perceive the environment to be abusive. Harris v. Forklift Sys., Inc., 510 U.S. 17, 19, 21-22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). In assessing the severity of workplace harassment, courts look to the totality of the circumstances, including whether: (1) “whether the [harassment ]is physically threatening or humiliating, or a mere offensive utterance”; (2) “whether it unreasonably interferes with an employee’s work performance”; and (3) “the effect on the employee’s psychological well-being.” See id. at 23, 114 S.Ct. 367. “No single factor is required” in order to establish a hostile work environment. Id.
Plaintiffs evidence is sufficient to satisfy both prongs of the severity analysis. First, a reasonable person would almost certainly find this atmosphere abusive. Burgs’ treatment of Plaintiff was not limited to “mere utterances” but included active attempts to humiliate and isolate Plaintiff. Burgs not only made derogatory remarks about Plaintiffs tics but also informed Plaintiff’s co-workers that Plaintiff was incompetent, had them check his work, and instructed them to stay away from Plaintiff. Furthermore, Burgs may have intentionally interfered with Plaintiffs work performance by understaffing *446 his unit and constantly requiring him to attend meetings while on duty. Second, Plaintiff very clearly found the atmosphere abusive. Plaintiff suffers from depression, which, according to Plaintiffs doctors, was caused by the work environment at Summit. The work environment at Summit caused Plaintiff to take long-term disability. Accordingly, Plaintiff has offered sufficient evidence of a hostile work environment and summary judgment was not proper.
III.
CONCLUSION
For the foregoing reasons, I would reverse the district court’s grant of summary judgment on Plaintiffs hostile work environment claim.