# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 20, 2011

Lyle W. Cayce
Clerk

No. 11-50345

MARIA BLEAK,

Plaintiff - Appellant

v.

PROVIDENCE HEALTH CENTER,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:10-CV-10

Before HIGGINBOTHAM, STEWART, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Maria Bleak ("Bleak") appeals the district court's summary judgment in favor of Defendant-Appellee Providence Health Center ("Providence"). Bleak originally filed a complaint with the Texas Workforce Commission-Civil Rights Division ("TWCCRD"), alleging disability discrimination. The TWCCRD issued Bleak a right to sue and Bleak filed suit in Texas state court, alleging violations of the Texas Commission on Human Rights Act ("TCHRA") and the Americans with Disabilities Act ("ADA"). Providence removed the case to federal district court.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

The district court ultimately granted summary judgment to Providence and denied Bleak's motion for reconsideration on the grounds that Bleak did not meet the elements necessary to establish a prima facie case for disability discrimination under either the TCHRA or the ADA. Bleak timely appealed, arguing that the evidence submitted to the district court was sufficient to make out a prima facie case for disability discrimination. For the following reasons, we AFFIRM.

## I.  BACKGROUND

Providence owns and operates a hospital in Waco, Texas. Bleak began working for Providence in 2006 as a custodial worker. Her job title was environmental services technician ("EST"). In late 2007, Bleak began to have pain and other difficulties with her lower back and was referred to a neurosurgeon, Dr. Misaki Oishi, for treatment. After successive failed therapy attempts, Bleak took leave in February 2008 under the Family Medical Leave Act to have back surgery.

Following surgery, Providence's human resources employees met with Bleak on several occasions to identify potential positions for Bleak on her return. The "Physical Demands Analysis" for the EST position states that in an eight-hour workday, the employee must be able to: sit for one hour; stand for eight hours; walk for eight hours; frequently bend or stoop; occasionally squat, climb to a height of six feet, reach above shoulder level, crouch, balance, push or pull, grip, pinch, lift up to 34 pounds; and have the capacity to carry. The Physical Demands Analysis defines "occasional" as 1%-33% and "frequent" as 34%-66%.

On April 1, 2008, Dr. Oishi gave Bleak a release to return to work with several restrictions inconsistent with the "Physical Demands Analysis." Providence did not allow Bleak to return to work because the release contained these restrictions.

On May 27, 2008, Dr. Oishi gave Bleak another release to work, with slightly less severe restrictions. Three days later, Dr. Oishi issued a third release, extending Bleak's lifting restriction to twenty-five pounds. On June 6, 2008, Dr. Oishi provided a fourth release, stating: "[Bleak] is under my care and treatment following lumbar spinal surgery, including instrumented fusion. She may return to work with no restrictions as long as her pain is under control."

Providence, however, was unsatisfied with the language of the last release. Providence attempted to contact Dr. Oishi for clarification but was unsuccessful. On August 5, 2008, Providence terminated Bleak's employment.

In late-October 2008, Bleak contacted Sylvia Lemley ("Lemley"), Providence's employee health coordinator, about returning to her job as an EST. Thereafter, Lemley contacted Dr. Oishi's nurse and followed up with Chuck Sivess, the Vice President for HR at Providence. That same day, Lemley faxed the Physical Demands Analysis for the EST position to Dr. Oishi, asking if those requirements would be safe for Bleak. On October 27, Dr. Oishi's nurse responded: "Per Dr. Oishi: She can probably do these things, but all he's going to say is that there is no neurosurgical contradiction to her doing this job." Providence did not offer Bleak a job. Bleak then filed her complaint with the TWCCRD, and subsequently sued for disability discrimination under the TCHRA and the ADA.

## II. STANDARD OF REVIEW

"We review a district court's grant of summary judgment de novo, applying the same standards as the district court." *Noble Energy, Inc. v. Bituminous Cas. Co.*, 529 F.3d 642, 645 (5th Cir. 2008). As such, summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## III. DISCUSSION

Both the ADA and TCHRA prohibit disability discrimination, and Texas courts "look to analogous federal precedent for guidance when interpreting the [TCHRA]." *See NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999). We thus apply the legal standard developed by the federal courts in ADA cases to resolve both the TCHRA and the ADA claims. *See Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 473-74 (5th Cir. 2006).

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, . . . discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).[1] Bleak concedes that she was not actually disabled, but the ADA also protects non-disabled persons who are "regarded as" disabled by their employers. A plaintiff is "regarded as" having a disability under the ADA if she:

> (1) has an impairment which is not substantially limiting but which the employer perceives as . . . substantially limiting . . . ; (2) has an impairment which is substantially limiting only because of the attitudes of others towards such an impairment; or (3) has no impairment at all but is regarded by the employer as having a substantially limiting impairment.

*Rodriguez*, 436 F.3d at 475 (quoting *Bridges v. City of Bossier*, 92 F.3d 329, 332 (5th Cir. 1996)).

---

[1] The current version of the ADA incorporates the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553 (2008). The ADAAA, however, only applies to claims arising on or after January 1, 2009. *See Carmona v. Sw. Airlines Co.*, 604 F.3d 848, 857 (5th Cir. 2010). Accordingly, we decide this case under the pre-amendment version of the Act and express no opinion on whether a different outcome would be required by the ADAAA.

A plaintiff may bring a claim based either on direct evidence of discrimination, or in the alternative, through indirect, circumstantial evidence of discrimination. *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995). When the plaintiff's claim is based on circumstantial evidence of discrimination, we apply the *McDonnell Douglas* burden-shifting framework. *See McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279 (5th Cir. 2000); *accord McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Although Bleak does not identify which of the three "regarded as" categories she claims to be in, it does not matter as she cannot establish a material issue of fact that Providence regarded her as having a "substantially limiting" impairment—a common requirement among the three types of "regarded as" disability. Bleak contends that Providence believed that she suffered from an impairment that substantially limited her ability to work. When the major life activity at issue is working, the plaintiff must show that the employer regarded her as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 491 (1999), *superseded by statute*, ADAAA, 122 Stat. 3553 (citation omitted); *see also Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1121 (5th Cir. 1998) (citation omitted); *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 727 (5th Cir. 1995) ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." (citation omitted)).

An individual is not substantially limited in the major life activity of working if other jobs utilizing the individual's skills are available. *Sutton*, 527 U.S. at 492. In light of this standard, we have held that no genuine issue of

material fact as to whether an employer regarded an employee as disabled existed where an employer attempted to place an employee in positions for which it did not deem her disqualified. *Sherrod*, 132 F.3d at 1121. In that same vein, attempts to facilitate an employee's return to work show that the employer did not regard an employee as substantially limited in working. *See Kemp v. Holder*, 610 F.3d 231, 238 (5th Cir. 2010); *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 807 n.10 (5th Cir. 1997) (indicating that the plaintiff's supervisor's desire that the plaintiff return to work showed that his employer did not consider him disabled).

Bleak failed to bring forward facts that would place in dispute whether Providence regarded her as substantially limited in the major life activity of working because the record does not show that Providence considered Bleak unable to perform a broad range of jobs. Indeed, Providence tried to retain Bleak and considered various other possible positions for her. Providence even went so far as to train Bleak for a position for which she was admittedly unqualified. Moreover, Providence went out of its way to contact Dr. Oishi to clarify the extent of Bleak's restrictions in an attempt to find her a suitable position. Ultimately, even Bleak admitted that Providence did all it could to retain her in some position at the hospital.

Nonetheless, Bleak offers two arguments in support of the contention that Providence regarded her as disabled. First, she relies on *Rodriguez*, 436 F.3d at 476-77, for the proposition that an interrogatory response that states the employee is not qualified for any job with the employer shows that the employer regarded the employee as disabled. Bleak's analogy is flawed, however, because the interrogatory at issue here is significantly different from the one in *Rodriguez*.

Bleak next argues that Providence employed a "100% healed" policy and thus regarded Bleak as disabled when it refused to re-hire her, citing *Henderson v. Ardco, Inc.*, 247 F.3d 645 (6th Cir. 2001). We need not decide whether to accept *Henderson*'s analysis in our circuit, because, the crux of the *Henderson* inquiry is simply whether the employer "misperceived or treated [the employee's] physical restrictions as substantially limiting her ability to work when in fact they were not substantially limiting." *Id.* at 650 (citation omitted). This point clearly differentiates the policy implemented in *Henderson* and the one used by Providence. Even if Providence did have a 100% healed policy, it was not applied in Bleak's case.

Bleak argues that she was entitled to an "individualized assessment." The summary judgment record shows that she received one. Indeed, Lemley averred that her concern in rehiring Bleak related to the specifically enumerated physical demands of the EST position. *See Acevedo v. City of Phila.*, 680 F. Supp. 2d 716, 743 (E.D. Pa. 2010) (highlighting the distinction between "100% healed" policies and those that take into account doctors' reports and medical documentation). Moreover, because Dr. Oishi had made the specific limitation about pain, Lemley stated that she was concerned about the potential for re-injury given the vague release and its dissimilarity to the release just six days prior that contained a 25-pound lifting restriction. Lemley's account of Bleak's situation is further supported by her unavailing attempts to contact Dr. Oishi in an effort to determine if Bleak was able to perform the applicable job requirements.

In sum, Bleak has not demonstrated a material fact question on the issue of whether Providence regarded her as disabled. Because Bleak has failed to present competent evidence of the first element of her prima facie case, the

district court was correct in granting Providence's motion for summary judgment.

AFFIRMED.